[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 11 
The Jefferson Circuit Court denied the defendants' motions to compel arbitration and to stay proceedings against them by plaintiff class representatives. The defendants appeal. We affirm in part, reverse in part, and remand.
On June 24. 1994, Gregory Tapscott filed an action in the Jefferson Circuit Court for himself and on behalf of similarly situated persons in Alabama, against MS Dealer Service Corporation, Jim Burke Automotive, Inc., Mississippi Life Insurance Company, and MS Casualty Insurance Company, alleging that those defendants had violated the Alabama Mini-Code and had committed common law fraud by financing the sale of automobile "extended service contracts" as part of the purchase of their automobiles, without including the cost of the contracts in the "finance charge" section of the sales documents.
Tapscott amended his complaint 10 times, adding and dismissing numerous plaintiffs and defendants. The defendants timely filed separate motions to compel arbitration and to stay judicial proceedings, pursuant to arbitration clauses contained in "buyer's orders" executed by signatory plaintiffs in connection with the purchase of their automobiles. The trial court denied all motions to compel arbitration and to stay proceedings, stating in a November 5, 1996, order:
 "As this case has been conditionally certified as a class action, the parties are now free, consistent with the Alabama Supreme Court's decision in Med Center Cars, Inc. v. Smith, et al., . . . to renew their arguments for and against arbitration on direct appeal to the Alabama Supreme Court."
(Citation omitted.)
On the initial appeal of this case, Med Center Cars, Inc. v.Smith, 682 So.2d 382, 384 (Ala. 1996), we held that the case was not reviewable because the defendants were not similarly situated, had not been certified as a class, and could not be joined as parties in a single class. On September 25, 1996, the trial court entered an order certifying a plaintiff class in this case.[1] *Page 12 
On appeal, the plaintiffs contend that if the Court determines that some class members executed binding arbitration agreements, then only those plaintiffs are subject to arbitration and that class members who did not execute arbitration agreements may seek judicial relief on their claims. The defendants contend that the plaintiffs should be compelled to arbitrate all claims, or, alternatively, that judicial proceedings should be stayed as to the defendants who did not execute an arbitration agreement with the plaintiffs.
The issues before this Court are:
(1) Are the claims against the signatory defendants subject to arbitration?
(2) If so, are the claims against the nonsignatory defendants so intertwined with those against the signatory defendants that all claims are subject to arbitration?
(3) If the claims against the signatory defendants are subject to arbitration, but the claims against the signatory defendants and nonsignatory defendants are not intertwined, is sub-classwide arbitration an option?
The Federal Arbitration Act (FAA) provides that written agreements to arbitrate future controversies are valid and enforceable if (1) the written agreement is voluntarily entered into and (2) appears in a contract that concerns a transaction involving interstate commerce. 9 U.S. §§ 1-15 (1970). See Exparte Gates, 675 So.2d 371 (Ala. 1996); Ex parte Jones,686 So.2d 1166 (Ala. 1996). If the FAA applies, then it "serves to preempt any state law purporting to deny the enforcement of a predispute arbitration agreement, on public policy grounds, and provides for the enforcement of arbitration agreements." Ex parte Brice Building Co., 607 So.2d 132, 133 (Ala. 1992), overruled on othergrounds by Ex parte Jones, 628 So.2d 316 (Ala. 1993).
We begin our discussion with 9 U.S.C. § 2. That section of the FAA provides:
 "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
(Emphasis added.)
In enacting this section, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. . . . Congress has thus mandated the enforcement of arbitration agreements." Southland Corp. v. Keating, 465 U.S. 1, 10,104 S.Ct. 852, 79 L.Ed.2d 1 (1984). The United States Supreme Court noted in Keating that the FAA "permits `parties' to an arbitrable dispute [to move] out of court and into arbitration as quickly and easily as possible," 465 U.S. at 7, 104 S.Ct. 852 (quotingMoses H. Cone Memorial Hospital v. Mercury Construction Corp.,460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)) (bracketed words added in Keating).
We must determine whether the FAA applies to this case and thus preempts state law. See Ala. Code 1975, § 8-1-41(3). We note that the contracts involved in this case *Page 13 
are written contacts. Therefore, the FAA applies if the contracts in fact involve interstate commerce.
The FAA is broadly construed so that the smallest connection of an arbitration agreement with interstate commerce is sufficient to bring the agreement within the FAA. 9 U.S.C. § 1; seeSnyder v. Smith, 736 F.2d 409 (7th Cir. 1984). In Allied-BruceTerminix Companies v. Dobson, 513 U.S. 265, 115 S.Ct. 834,130 L.Ed.2d 753 (1995), the Supreme Court determined that the FAA reached to the limits of Congress's power to regulate interstate commerce, 513 U.S. at 268, 115 S.Ct. 834, and held that a domestic contract for termite protection was a contract involving interstate commerce because the materials used came from outside Alabama. 513 U.S. at 282, 115 S.Ct. 834. The defendant Med Center Cars, Inc., d/b/a Med Center Mazda, alleges that the service agreement in question was issued by MS Dealer Service Corporation and provides that all claims require prior authorization from MS Dealer Service, a Mississippi corporation operating in interstate commerce. (Med Center Mazda's "Motion to Compel Arbitration and Stay All Proceedings.") The defendant Crown Pontiac, Inc., asserts that the 1993 Pontiac Grand Am automobile sold to the plaintiff Louis Clements was purchased at an automobile auction in Orlando, Florida, on October 29, 1992, and was transported to Birmingham, Alabama, where it was sold to Clements on July 12, 1993. (Affidavit of Carl T. Reid.) The defendant Serra Automotive, Inc., alleges that the 1992 Mazda B2600 automobile it sold Smith was manufactured outside Alabama and was delivered to Serra Automotive in Alabama. (Affidavit of Marty Brill.) Based on these factual allegations, which have not been refuted, we conclude that the defendants have sufficiently shown that in this case the contracts for the sale of automobiles involve interstate commerce. Therefore, we conclude that the FAA applies to this case and preempts state law.
 Signatories
We must first determine whether the claims against the signatory defendants are subject to arbitration. Med Center Mazda, Crown Pontiac, Inc., and Serra Automotive, Inc., contend that they are signatories to valid arbitration agreements. However, the plaintiffs, Kimberly Smith and Douglas Smith argue that the alleged contract between them and Med Center Mazda lacks mutuality of assent because neither Med Center Mazda nor Douglas Smith signed the "buyer's order." The plaintiff Louis Clements argues that the alleged contract between him and Crown Pontiac lacks mutuality of remedy and is unconscionable. The plaintiff Vivian Smith argues that Serra Automotive is not a party to the alleged arbitration agreement, which she says is between her and Serra Mitsubishi, Inc., and therefore that Serra Automotive, Inc., cannot compel arbitration. In addition, Vivian Smith contends that the buyer's order executed by her and Serra Mitsubishi, Inc., contains a nonmerger clause, and, therefore, prevents the integration of the buyer's order and the sales contract, which was executed by Serra Automotive, Inc., and Smith and contains no merger clause.
 Part I(A) Med Center Cars, Inc. d/b/a Med Center Mazda
The arbitration agreement signed by Kimberly Smith is found in the "Buyer's Order." It reads:
"DISPUTE RESOLUTION AGREEMENT
 "BUYER HEREBY ACKNOWLEDGES AND AGREES THAT ALL DISPUTES AND CONTROVERSIES OF EVERY KIND AND NATURE BETWEEN BUYER AND SELLER ARISING OUT OF OR IN CONNECTION WITH THE PURCHASE OF THIS VEHICLE WILL BE RESOLVED BY ARBITRATION WITH THE PROCEDURE SET FORTH ON THE REVERSE SIDE OF THIS BUYER'S ORDER."
In pertinent part, the dispute-resolution procedure set out on the reverse side of the buyer's order provides:
 "All disputes and controversies of every kind and nature between the parties hereto arising out of or in connection with *Page 14 
this contract, its subject matter or its negotiation, as to the existence, construction, validity, interpretation or meaning, performance, nonperformance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof or any claim alleging fraud in fact, fraud in the inducement, deceit, or suppression of any material fact shall be submitted to binding arbitration pursuant to the provisions of the Federal Arbitration Act and according to the commercial rules of the American Arbitration Association then in effect in Birmingham, Alabama. Such arbitration proceedings may be initiated by either party by notice in writing to the other and to the American Arbitration Association. Each party shall bear his own arbitration costs and expenses.
". . . .
 "The parties stipulate that the provisions hereto shall be a complete defense to any suit, action, or proceeding instituted in any federal, state, or local court or before any administrative tribunal with respect to any controversy or dispute arising hereunder."
(Emphasis added.)
Med Center Mazda contends that both of the Smiths are signatories to a valid arbitration agreement. However, the Smiths contend that neither Douglas Smith nor Med Center Mazda signed the buyer's order containing the arbitration agreement and, thus, that no valid agreement to arbitrate exists. Therefore, according to the Smiths, Med Center Mazda cannot compel arbitration.
Arbitration agreements are a matter of contract law, and a court interpreting such an agreement should consider the intent of the parties. See Allstar Homes, Inc., d/b/a/ Best Value MobileHomes v. Waters, 711 So.2d 924 (Ala. 1997); Allied-BruceTerminix, supra. Kimberly Smith signed the buyer's order, dated February 13, 1993, which contains a written dispute-resolution agreement on the front side and the dispute-resolution procedure on the reverse side. However, Med Center did not sign the buyer's order. Med Center's name is printed on the buyer's order to the right of Kimberly Smith's signature, and appears without a signature, as follows:
 "[Not valid unless accepted by seller or its authorized representative]
"ACCEPTED BY SELLER:
 "MED CENTER CARS, INC. d/b/a MED CENTER MAZDA
"BY: __________________"
This Court recently stated in Ex parte Pointer, 714 So.2d 971,972 (Ala. 1997), quoting Crown Pontiac, Inc v. McCarrell,695 So.2d at 618-19 (Ala. 1997):
 "`The purpose of a signature is to show "mutuality and assent," which are required for a contract to be binding. Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 304 (Ala. 1986). Conversely, in this case the absence of a signature under the arbitration clause shows a lack of mutuality and assent, where the contract contains a signature line specifically for the arbitration clause, but where McCarrell did not sign on that line, although he signed on other lines that similarly indicated agreement to specific terms.'"
Med Center seeks to enforce the arbitration clause contained in the buyer's order, although it did not affix its signature to the buyer's order. Although Kimberly Smith signed the buyer's order, as previously pointed out the buyer's order specifically provides that it is "Not valid unless accepted by seller or its authorized representative." Therefore, the buyer's order, which contains the arbitration clause, is not enforceable.
Moreover, the Smiths and Med Center Mazda entered a sales contract on the same day the buyer's order was executed; however, the sales contract does not contain an arbitration clause or a merger clause. The signatures of both Douglas Smith and Kimberly Smith and the signature of a Med Center representative appear in the sales contract. We conclude that a valid sales contract, which does not contain an arbitration agreement, was executed between the Smiths and Med Center. Therefore, neither Kimberly Smith nor Douglas Smith can be compelled to arbitrate their claims against Med Center Mazda. *Page 15 
We affirm the trial court's order denying Med Center Mazda's motion to compel arbitration against Kimberly Smith and Douglas Smith.
 Part I(B) Crown Pontiac, Inc.
The arbitration agreement executed by Louis Clements is found in the "Retail Buyer's Order"; it reads:
"DISPUTE RESOLUTION AGREEMENT
 "I HEREBY ACKNOWLEDGE AND AGREE THAT ALL DISPUTES AND CONTROVERSIES OF EVERY KIND AND NATURE BETWEEN MYSELF AND CROWN PONTIAC-NISSAN, INC. ARISING OUT OF OR IN CONNECTION WITH THE PURCHASE OF THIS VEHICLE BY ME, WILL BE RESOLVED BY ARBITRATION IN ACCORDANCE WITH THE PROCEDURE SET FORTH IN THIS RETAIL BUYER'S ORDER."
In pertinent part, the procedure set out on the reverse side of the retail buyer's order provides:
 "All disputes and controversies of every kind and nature between the parties hereto arising out of or in connection with this contract, its subject-matter or its negotiation, as to the existence, construction, validity, interpretation or meaning, performance, nonperformance, enforcement, operation, breach of contract, breach of warranty, continuance or termination thereof or any claim alleging fraud in fact, fraud in the inducement, deceit, or suppression of any material fact shall be submitted to binding arbitration pursuant to the provisions of the Federal Arbitration Act under the following procedures:
". . . .
 "(f) The parties stipulate that the provisions hereto shall be a complete defense to any suit, action, or proceeding instituted in any federal, state, or local court or before any administrative tribunal with respect to any controversy or dispute arising hereunder.
 "(g) The parties agree that it is the purpose of this provision of the contract and the intent of the parties hereto, to make the submission to arbitration of any dispute or controversy arising out of this Agreement, as set forth hereinabove, concerning any complaint or claim of CONSUMER, an express condition precedent to any legal or equitable proceeding of any nature whatsoever by CONSUMER."
(Emphasis added.)
Crown Pontiac contends that Louis Clements executed a binding arbitration agreement. However, Clements argues that the buyer's order is a contract of adhesion and indicates an absence of mutuality of remedy and is, therefore, unconscionable. Clements argues that the buyer's order, specifically subsection (g), denies him the right to judicial relief, but allows Crown Pontiac to seek judicial relief against any claims it may have against Clements. We find no merit in Clements's contention.
To prove a contract of adhesion, Clements must show that the contract was not fairly entered into because he, being in an inferior bargaining position, had no meaningful choice of agreeing to arbitration or not. See Northcom, Ltd. v. James,694 So.2d 1329 (Ala. 1997). However, Clements offered no evidence tending to show that he was presented the terms of the buyer's order on a "take it or leave it" basis, nor did he show that he was not provided a reasonable chance to negotiate and that under such conditions he could not purchase the automobile in question except by agreeing to the terms of the contract. Clements has not shown that his contract is one of adhesion.
The arbitration agreement included in the buyer's order does not lack mutuality of remedy and is not unconscionable merely because it requires Clements to arbitrate claims that he may have against Crown Pontiac, but allows Crown Pontiac to litigate claims it may have against Clements. See Northcom, supra.
We also find that Clements's claims against Crown Pontiac are included in the broad language of the arbitration agreement *Page 16 
executed between him and Crown Pontiac. Clements alleges that Crown Pontiac conspired to commit common law fraud by financing the sale of an extended-service contract as part of the purchase of his automobile without including the cost of the contract in the "finance charge" section of the sales document. The arbitration agreement signed by Clements covers "all disputes andcontroversies of every kind and nature between [Clements] and Crown Pontiac-Nissan, Inc. arising out of or in connection withthe purchase of this vehicle by [Clements]." Clearly, Clements's allegation of fraud arose out of the purchase of his vehicle from Crown Pontiac, and it is, therefore, encompassed by this broad arbitration clause.
Therefore, we hold that Louis Clements should be compelled to arbitrate his claims against Crown Pontiac, pursuant to the terms of the arbitration agreement. We reverse the trial court's order denying Crown Pontiac's motion to compel arbitration against Louis Clements.
 Part I(C) Serra Automotive, Inc.
The arbitration clause included in the addendum to the "Retail Buyer's Order" that Vivian Smith signed on November 17, 1994, reads as follows in pertinent part:
"ADDENDUM TO RETAIL BUYER'S ORDER
". . .
 "(2) That in the event any dispute(s), under the terms of this contract of sale arise, (including but not limited to the terms of the agreement, the condition of the motor vehicle sold, the conformity of the motor vehicle sold to the contract, the representations, promises, undertakings or covenants made by Serra Mitsubishi, Inc.
in connection therewith, or any terms of any credit life and/or disability insurance purchased simultaneously herewith, or extended service or maintenance agreements), that Serra Mitsubishi, Inc. and the purchaser agree to submit such dispute(s), to binding arbitration, pursuant to the provisions of 9 U.S.C. § 1, et seq. and according to the commercial rules of the American Arbitration Association then existing in Birmingham, Alabama.
 "(3) That in the event any dispute arises between purchaser and Serra Mitsubishi, Inc., its officers, agents and employees, the said dispute will be submitted to binding arbitration pursuant to 9 U.S.C. § 1, et seq. and according to the commercial rules of the American Arbitration Association then existing in Birmingham, Alabama.
". . . .
 "(5) This addendum constitutes part of your retail [buyer's] order."
(Emphasis added.)
Vivian Smith contends that Serra Automotive, Inc., is not a party to the signed contract containing the agreement to arbitrate between Vivian Smith and Serra Mitsubishi, Inc. However, Serra Automotive, Inc., contends that Vivian Smith entered into an agreement to arbitrate with Serra Automotive on November 17, 1994, because, it contends, "Serra Mitsubishi, Inc." is a trade name for "Serra Automotive, Inc." We disagree. Serra Automotive, Inc., is an entity separate and distinct from Serra Mitsubishi, Inc.
Vivian Smith signed an arbitration agreement with SerraMitsubishi, Inc., whose name appears at the top of the retail buyer's order and throughout the language of the arbitration agreement. Serra Automotive's name does not appear anywhere in the buyer's order, nor does the phrase "Serra Automotive, Inc.,d/b/a Serra Mitsubishi, Inc." Almost two months after Smith and Serra Mitsubishi, Inc., executed the buyer's order containing the arbitration clause, Vivian Smith and Serra Automotive, Inc., entered into a "Retail Installment Sale Contract, " which did notcontain an arbitration clause or a merger clause. Additionally, the buyer's order contains a nonmerger clause, which states:
 "The Purchaser agrees that all provisions stated hereon are part of this Order and that this Order supersedes any prior agreement and is the complete and exclusive agreement on the subject matters covered *Page 17 by this Order. Further, Purchaser and Seller agree that no person is authorized to make any representations beyond those expressed in this Order. Verbal promises by salesmen are not valid and any promises or understandings not herein specified in writing are expressly waived by the Purchaser."
(Emphasis added.)
We conclude that the buyer's order containing the arbitration agreement between Serra Mitsubishi, Inc., and Vivian Smith is the "complete and exclusive" agreement to arbitrate claims, and that it is an agreement between these two parties only. Serra Automotive, Inc., cannot enforce an arbitration agreement between Serra Mitsubishi, Inc., and Smith, to which it is not a party.
We affirm the trial court's order denying Serra Automotive's motion to compel arbitration against Vivian Smith.
 Part II Nonsignatories
Now that we have determined that the claims against the signatory defendants are subject to arbitration, we must determine whether the claims against the nonsignatories are so "intimately founded in and intertwined with" those against the signatories that all claims are subject to arbitration.
The nonsignatory defendants contend that the Court should stay all judicial proceedings and compel arbitration as to all claims in this case,[2] or, in the alternative and in the interest of consistent results, stay proceedings of claims against nonsignatory defendants pending arbitration of claims against the signatory defendants. The nonsignatory defendants also argue that the allegations of conspiracy against them serve to connect the claims against the nonsignatory defendants to those against the signatory defendants that are subject to arbitration, because of their commonality. And, the defendants argue, to the extent one defendant is liable for another defendant's actions through an alleged conspiracy, the intertwined claims must be arbitrated. Last, the defendants argue that the Court must at least stay judicial proceedings pursuant to 9 U.S.C. § 3, which states:
 "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such an arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."
Whether to stay nonarbitrable claims pending arbitration of related claims is within the discretion of the trial court. SeeTerminix Int'l Co. v. Jackson, 669 So.2d 893 (Ala. 1995); Moses H. Cone Memorial Hospital, 460 U.S. 1, 103 S.Ct. 927,74 L.Ed.2d 765 (1983). The United States Supreme Court, in Dean WitterReynolds Inc. v. Byrd, 470 U.S. 213, 217, 105 S.Ct. 1238,84 L.Ed.2d 158 (1985), held:
 "[T]he Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."
(Emphasis added.)
In his special concurrence in Byrd, Justice White addressed the issue:
 "In addition, once it is decided that the two proceedings [arbitration and judicial proceedings] are to go forward independently, the concern for speedy resolution suggests that neither should be delayed. . . . [I]t *Page 18 
seems to me that the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course."
470 U.S. at 225, 105 S.Ct. 1238.
We do not find that the trial court abused its discretion. We affirm the trial court's order denying the defendants' motions to stay judicial proceedings.
The plaintiffs contend that the claims against the nonsignatory defendants are not arbitrable because, they say, the claims against the nonsignatories are not sufficiently intertwined with those against the signatories. The plaintiffs also argue that the conspiracy allegation does not permit arbitration of the claims against the nonsignatories, because, the plaintiffs say, they are not seeking to collect damages against one defendant for the actions of another defendant.
The plaintiffs' allegation of conspiracy reads:
 "Defendants, or any combination of them, acting in concert with each other, schemed, combined and conspired together to commit the violations of the Alabama Mini-Code described and alleged in Count One of this Complaint, and!or to commit the fraud by misrepresentation of material facts alleged in Count Two of this Complaint, and/or to commit the fraud by suppression of material facts alleged in Count Three of this Complaint and/or to commit the fraudulent deceit alleged in Count Four of this Complaint; and did commit an overt act in furtherance of that conspiracy, to wit: One or more conspirators included the fee or premium for the `extended service contract' and/or `motor club' membership in the amount financed of each plaintiff's financing agreement."
(Plaintiffs' "Eighth Amendment to the Complaint," ¶ 1148.) (Emphasis added.)
The plaintiffs' conspiracy allegation alleges that anycombination of defendants, which could be found to include only
nonsignatory defendants, conspired to violate the Alabama Mini-Code. If only nonsignatories were found to have conspired, then the claims against them would not have an integral connection with the claims against the signatory defendants so as to subject all claims to arbitration. But, however, should the trial court find that the evidence supports the proposition that the claims of conspiracy against the signatories and the claims against the nonsignatories are intertwined, the court may make a ruling at that time.
The nonsignatory defendants argue that the claims against them are so intertwined with those against the signatories that all claims should be arbitrated. We note that a federal court has held, based upon the theory of "equitable estoppel":
 "[A] signatory [is] bound to arbitrate with a nonsignatory at the nonsignatory's insistence because of `the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were `intimately founded in and intertwined with the underlying contract obligations.'"
Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 779
(2d Cir. 1995). See also Sunkist Soft Drinks, Inc. v. SunkistGrowers, Inc., 10 F.3d 753, 757 (11th Cir. 1993), cert. denied,513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); McBroPlanning Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342,344 (11th Cir. 1984); J.J. Ryan Sons, Inc. v. Rhone PoulencTextile, S.A., 863 F.2d 315, 320-21 (4th Cir. 1988).
The defendants cite, among other cases, Ex parte Gates,675 So.2d 371 (Ala. 1996). However, the issue of a nonsignatory's standing to compel arbitration was never raised in Gates. InGates, a purchaser of a mobile home sued the retailer (Bilo Homes) and the manufacturer (Palm Harbor Homes), alleging fraud, breach of warranty, negligent and wanton installation, and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301. See 675 So.2d at 373. The sales contract contained a broad arbitration agreement providing that all claims arising out of or in relation to the contract or a resulting relationship must be arbitrated. Id. The manufacturer, who was not a signatory, sought to compel arbitration of the plaintiff's claims against it, along with the arbitration of the *Page 19 
claims against the retailer and the salesman and general manager for Bilo Homes. Id. The trial court entered an order compelling arbitration of all claims, and the plaintiffs petitioned for a writ of mandamus directing the trial court to vacate its order.Id. at 372. We held that the plaintiffs' claims were encompassed in the arbitration clause. Id. at 375. The fact that Palm Harbor was not a signatory was not raised in Gates. However, we addressed the issue of a nonsignatory in Ex parte Isbell,708 So.2d 571 (Ala. 1997.)
In Isbell, Roy and Carroll Isbell purchased a mobile home from American Housing, through negotiations with Doug Marshman, an employee of American Housing. Id. The home had been manufactured by Southern Energy Homes, Inc. Id. The Isbells executed a retail installment contract, and a security agreement that contained an agreement to arbitrate and that was signed by Marshman on behalf of American Housing. The Isbells also received a limited warranty from Southern Energy Homes stating, among other things, that Southern would not be liable for any agreement or commitment made by other employees, dealers, or agents unless it was set forth in the warranty. Id. The Isbells sued Marshman, American Housing, and Southern Energy Homes, alleging that the mobile home they had purchased was damaged and defective when it was delivered and that the defendants had failed to satisfactorily repair it. Id.
The defendants moved to compel arbitration and to stay the action. Id. The trial court granted the joint motion to compel arbitration, and the Isbells petitioned for a writ of mandamus, arguing, in part, that neither Marshman nor Southern Energy Homes had standing to enforce the arbitration agreement. Id. We held that even though Marshman had signed the installment contract on behalf of American Housing, he was indeed a signatory capable of seeking the benefit of the agreement to arbitrate. Id. However, we held that the Isbells' claims against Southern Energy Homes, a nonsignatory to the retail installment contract, did not arise out of the retail installment contract, but instead arose out of Southern Energy Home's separate warranty provided to the Isbells.Id. Therefore, we reasoned, the Isbells were not compelled to arbitrate their claims against Southern Energy Homes. Id.
The defendants also rely on McBro Planning Development Co. v.Triangle Electrical Construction Co., 741 F.2d 342 (11th Cir. 1984) (upholding an arbitration order because of the close relationship of the alleged wrongs to the underlying contractual duties), and Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,10 F.3d 753 (11th Cir. 1993) (holding that Sunkist was equitably estopped from avoiding arbitration of its claims, because of the "nexus between Sunkist's claims and the license agreement" and "the integral relationship between SSD and Del Monte"). Id. at 758. However, we do not have those close relationships between the claims in this case.
The language of the arbitration clauses in this case are not broad enough to encompass claims against the nonsignatories. The written arbitration agreements in this case expressly limit the scope of the agreements to "disputes, claims, and controversies"arising between the "Buyer" and the "Seller" only. The buyer and the seller are the only parties referred to in the arbitration agreements. The nonsignatory defendants are not the "sellers" referred to in the individual arbitration agreements at issue in this case. Therefore, the nonsignatories have no standing to seek enforcement of those arbitration agreements. Only disputes between the "buyer" and the "seller" in the contracts containing arbitration agreements are subject to the arbitration agreements. See Ex parte Jones, 686 So.2d 1166 (Ala. 1996).
Accordingly, we conclude that the claims against the nonsignatory defendants are not so intertwined with those against the signatories as to subject all claims to arbitration. We affirm the trial court's order denying the nonsignatory defendants' motions to compel arbitration.
 Part III Sub-Classwide Arbitration
The plaintiffs contend that they are entitled to class-wide arbitration because, they say, the "actual damages recoverable by each individual are too small to justify the cost of commencing an arbitration proceeding," *Page 20 
the plaintiffs would have "no realistic, viable means of redress," and the "defendants will be judicially permitted to profit from impunity from their wrongdoing." (Appellees' Consolidated Brief, pp. 65-66.) In addition, the plaintiffs argue that if class-wide arbitration is ordered, then only the class representatives, not each individual member, should be required to pay the minimum $500.00 filing fee to commence arbitration,[3] the arbitrator's fee, and associated costs. Among other cases, the plaintiffs rely on Rio Energy Int'l, Inc.v. Hilton Oil Transport, 776 F. Supp. 120 (S.D.N.Y. 1991) (consolidated arbitration proceeding was proper where common questions of law and fact existed, as well as a danger of conflicting findings).
The defendants contend, however, that most federal courts have rejected the use of class-wide arbitration, regardless of whether the proceedings involve common questions of law or fact, unless the language in the arbitration agreement specifically provides for class-wide arbitration. The defendants rely on, among other cases, Protective Life Ins. Corp. v. Lincoln Nat'l Life lns.Corp., 873 F.2d 281 (11th Cir. 1989), in uhich the United States Court of Appeals for the Eleventh Circuit held that the district court could not consolidate arbitration proceedings because in the arbitration agreements the parties had not provided for consolidation.
This Court has not directly addressed the issue of class-wide arbitration, and the FAA is silent as to that issue. Caselaw from various federal circuit courts is persuasive authority in our state courts. See Wyser v. Ray Sumlin Constr. Co., 680 So.2d 235
(Ala. 1996). Although there are benefits to class-wide arbitration, such as efficient resolution of common claims and judicial economy, no persuasive authority permitting class-wide arbitration exists at this time.[4] See Champ v. Siegel TradingCo., 55 F.3d 269, 275 (7th Cir. 1995) ("For a federal court to read such a term [class-wide arbitration] into the parties' agreement would `disrupt the negotiated risk/benefit allocation and direct [the parties] to proceed with a different sort of arbitration,'" quoting New England Energy, Inc. v. KeystoneShipping Co., 855 F.2d 1, 10 (1st Cir. 1988) (Selya, J., dissenting)). Although the plaintiffs' contentions are practically appealing, after reviewing the authorities we conclude that to require class-wide arbitration would alter the agreements of the parties, whose arbitration agreements do not provide for class-wide arbitration. While we can understand and applaud the efforts of the trial court to seek a method that would allow those parties claiming small amounts of individual damages to obtain a remedy, we are persuaded by the federal authority on this issue and hold that class-wide arbitration should not be permitted in this case.
We reverse the trial court's order that would have allowed arbitration to proceed on a class-wide basis. *Page 21 
1960214 — AFFIRMED.
1960215 — REVERSED AND REMANDED.
1960216 — AFFIRMED.
1960401 — AFFIRMED.
1960601 — AFFIRMED.
1960602 — AFFIRMED.
1960826 — AFFIRMED.
[1] The trial court certified three (3) subclasses, pursuant to Rule 23(b) (3), Ala. R. Civ. P., defined as:
 "(A) Extended Service Contract Subclass, asserting claims for violation of the Alabama Mini-Code, fraud by misrepresentation of material facts, fraud by suppression or concealment of material facts and horizontal conspiracy among all named defendants, consisting of those members of the class whose credit agreements:
 "(1) Include the cost of the `extended service contract,' maintenance agreement or extended warranty in the `amount financed' as opposed to the `finance charge'; and
 "(2) Do not contain a `predispute arbitration agreement,' `dispute resolution agreement' incorporating an arbitration clause, or other provisions under which the claims alleged in this case are subject to arbitration.
 "(B) Commissions Subclass, asserting claims for fraud by misrepresentation of material facts, fraud by suppression or concealment of material facts and horizontal conspiracy among all named defendants, consisting of those members of the class:
 "(1) Whose charge for all `extended service contract' included a `commission' taken, received by or paid to the dealer defendant which sold the `extended service contract,' provided that the dealer defendant was not licensed by the Alabama Insurance Department to sell extended service contracts in Alabama; and
 "(2) Whose credit agreements do not contain a `predispute arbitration agreement,' `dispute resolution agreement' incorporating an arbitration clause, or other provisions under which the claims alleged in this case are subject to arbitration.
 "(C) Arbitration Subclass, consisting of those members of the class whose said credit agreements contain a `predispute arbitration agreement,' `dispute resolution agreement' incorporating an arbitration clause or other such provisions under which the claims relating to `extended service contracts' may be arbitrable under Allied-Bruce Terminix companies, Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), which arbitration clause was properly signed and accepted by the class member."
[2] The nonsignatory defendants argue that the Court has allowed defendants not party to valid arbitration agreements to arbitrate their claims citing Ex parte Gates, 675 So.2d 371 (Ala. 1996) (arbitration agreement found to be broad enough to encompass a party that shares an agency relationship with the signatories of a contract that contains an arbitration clause), and Ex parte Gray, 686 So.2d 250 (Ala. 1996) (customer compelled to arbitrate claims against both dealership and salesman, although arbitration agreement was signed only by customer and dealership).
[3] "ADMINISTRATIVE FEES
 "The administrativt fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.
"Filing Fees
 "A nonrefundable filing fee is payable in full by a filing party when a claim, counterclaim or additional claim is filed, as provided below.
"Amount of Claim Filing Fee
 "Up to $10,000 . . . . . . . . . . . . . . $500 "Above $10,000 to $50,000 . . . . . . . . . $750 "Above $50,000 to $100,000 . . . . . . . $1,250 "Above $100,000 to $250,000 . . . . . . . $2,000 "Above $250,000 to $500,000 . . . . . . . $3,500 "Above $500,000 to $1,000,000 . . . . . . $5,000 "Above $1,000,000 to $5,000,000 . . . . . $7,000
 "When no amount can be stated at the time of filing, the minimum fee is $2,000, subject to increase when the claim or counterclaim is disclosed.
 "When a claim or counterclaim is not for a monetary amount, an appropriate filing fee will be determined by the AAA.
 "The minimum filing fee for any case having three or more arbitrators is $2,000.
 "The administrative fee for claims in excess of $5,000,000 will be negotiated."
Am. Arb. Ass'n Comm. Arb. Fee Schedule (1996).
[4] The Second, Fifth, Sixth, Eighth, Ninth, and Eleventh Circuits have held that absent an express provision in the parties' arbitration agreement, the duty to rigorously enforce arbitration agreements as set forth in section 4 of the FAA bars district courts from applying Rule 42 (a), F.R.Civ.P. to require consolidated arbitration, even where consolidation would promote the expeditious resolution of related claims.
SHORES, HOUSTON, and KENNEDY, JJ., concur.
ALMON, J., concurs in Parts I(A), I(C), and II, and expresses no opinion as to Parts I(B) and III.
LYONS, J., concurs as to Parts I(B) and III; concurs in the result as to Part II; and dissents as to Parts I(A) and I(C).
HOOPER, C.J., and MADDOX and SEE, JJ., concur in the result as to Parts I(B), II, and III, and dissent as to Parts I(A) and I(C).