HOUSTON, Justice.[1]
Gary Stamey and Deborah Stamey, third-party plaintiffs in an action currently pending in the Mobile Circuit Court, petition for a writ of mandamus directing the trial court to vacate its order compelling arbitration of the Stameys’ claims against Green Tree Financial Corporation, Hall-mont Homes, Inc., and Hallmont employees Jarod Hall and Gaylon Hall. We deny the writ.
In December 1996, the Stameys contracted with Hallmont Homes, Inc., which is operated by Jarod Hall and Gaylon Hall, to purchase land and a mobile home. The contract also included assurances that Hallmont would prepare a foundation for the mobile home and would install a septic system and a light pole. The Stameys claim that the septic system and the light pole were never installed. The Stameys had borrowed money from Green Tree to pay for these purchases and installations. Included in the financing agreement between Green Tree and the Stameys was this arbitration provision:
“ARBITRATION: ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING FROM OR RELATING TO THIS CONTRACT OR THE PARTIES THERETO SHALL BE RESOLVED BY BINDING ARBITRATION BY ONE ARBITRATOR SELECTED BY YOU WITH MY CONSENT. THIS AGREEMENT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT AT 9 U.S.C. SECTION 1. JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THE PARTIES AGREE AND UNDERSTAND THAT THEY CHOOSE ARBITRATION INSTEAD OF LITIGATION TO RESOLVE DISPUTES. THE PARTIES UNDERSTAND THAT THEY HAVE A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES IN COURT, BUT THAT THEY PREFER TO RESOLVE THEIR DISPUTES THROUGH ARBITRATION, EXCEPT AS PROVIDED HEREIN. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). THE PARTIES AGREE AND UNDERSTAND THAT ALL DISPUTES ARISING UNDER CASE LAW, STATUTORY LAW AND ALL OTHER LAWS INCLUDING, BUT NOT LIMITED TO, ALL CONTRACT, TORT AND PROPERTY DISPUTES WILL BE SUBJECT TO BINDING ARBITRATION IN ACCORD WITH THIS CONTRACT. THE PARTIES AGREE THAT THE ARBITRATOR SHALL HAVE ALL POWERS PROVIDED BY LAW, THE CONTRACT AND THE AGREEMENT OF THE PARTIES. THESE POWERS SHALL INCLUDE ALL LEGAL AND EQUITABLE REMEDIES INCLUDING BUT NOT LIMITED TO, MONEY DAMAGES, DECLARATORY RELIEF AND INJUNC-TIVE RELIEF. NOTWITHSTANDING ANYTHING HEREUNTO [sic] THE CONTRARY, YOU RETAIN AN OPTION TO USE JUDICIAL (FILING A LAWSUIT) OR NONJUDICIAL RELIEF TO ENFORCE A SECURITY AGREEMENT RELATING TO THE MANUFAC *88 TURED HOME SECURED IN A TRANSACTION UNDERLYING THIS ARBITRATION AGREEMENT, TO ENFORCE THE MONETARY OBLIGATION SECURED BY THE MANUFACTURED HOME OR TO FORECLOSE ON THE MANUFACTURED HOME. THE INSTITUTION AND MAINTENANCE OF A LAWSUIT TO FORECLOSE UPON ANY COLLATERAL, TO OBTAIN A MONETARY JUDGMENT OR ENFORCE THE SECURITY AGREEMENT SHALL NOT CONSTITUTE A WAIVER OF THE RIGHT OF ANY PARTY TO COMPEL ARBITRATION REGARDING ANY OTHER DISPUTE OR REMEDY SUBJECT TO ARBITRATION IN THIS CONTRACT, INCLUDING THE FILING OF A COUNTERCLAIM IN A SUIT BROUGHT BY YOU PURSUANT TO THIS PROVISION.”
Dr. Bernard Eichold II, in his capacity as health officer of Mobile County, sued for injunctive relief against the Stameys, alleging that their property was in violation of state health laws — specifically, his complaint alleged a violation concerning the septic system on the Stameys’ property. The Stameys filed an answer, along with a third-party complaint against Hall-mont and Jarod Hall and Gaylon Hall (hereinafter all collectively referred to as “Hallmont”), and Green Tree, alleging conversion, fraud, and breach of contract. The Stameys contend that Hallmont and/or Green Tree caused the problem with the septic system for which the Sta-meys were sued. Hallmont and Green Tree both moved the trial court to compel arbitration of the claims asserted against them. Hallmont was not a signatory to the arbitration agreement. The trial court granted the motions to compel.
This Court has held that when the issue raised in a petition for the writ of mandamus is the correctness of a ruling on the question of arbitrability, that ruling is reviewed de novo. Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999).
It is undisputed that the Stameys voluntarily and knowingly entered into the arbitration agreement with Green Tree. We have reviewed the Stameys’ arguments concerning the arbitration provision as they relate to their claims against Green Tree, and we find them to be without merit. See Northcom, Ltd. v. James, 694 So.2d 1329 (Ala.1997), and Ex parte Isbell, 708 So.2d 571 (Ala.1997). Green Tree presented the trial court evidence showing that the transaction on which the Stameys’ claims are based involved interstate commerce. Exhibits to the Stameys’ petition show that the Green Tree office the Sta-meys dealt with is located in Pensacola, Florida, and the Stameys acknowledged in the security agreement they signed that the contract involves a transaction in interstate commerce. Therefore, the trial court properly granted Green Tree’s motion to compel arbitration.
While the Stameys’ contract with Green Tree contains ah arbitration agreement, neither the sale contract between the Sta-meys and Hallmont nor any other document to which Hallmont was a signatory contained an arbitration agreement. Hall-mont’s motion to compel arbitration was based on the arbitration provision in the contract between Green Tree and the Sta-meys.
Normally, in order to have a valid arbitration provision, there must be an agreement to arbitrate, and if no agreement exists, then a party cannot be forced to submit a dispute to arbitration. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The question whether one has assented to an arbitration provision is governed by ordinary principles of a state’s common law and statutory law governing the formation of contracts. See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). As *89 sent to arbitrate is usually to be manifested through a party’s signature on the contract containing the arbitration provision. However, both Federal courts and Alabama courts have enforced exceptions to this rule, so as to allow a nonsignatory, and even one who is not a party, as to a particular contract, to enforce an arbitration provision within that same contract. Two such exceptions apply to the present case. The first is an exception under a theory of equitable estoppel for claims that are so “intimately founded in and intertwined with” the claims made against a party that is a signatory to the contract. See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993) (quoting McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984)); see also Ex parte Napier, 723 So.2d 49 (Ala.1998); Ex parte Gates, 675 So.2d 371 (Ala.1996). The second exception arises from a third-party-beneficiary theory that affords the third party all the rights and benefits, as well as the burdens, of that contract, including those associated with arbitration. See Ex parte Dyess, 709 So.2d 447 (Ala.1997); Ex parte Warren, 718 So.2d 45 (Ala.1998); Georgia Power Co. v. Partin, 727 So.2d 2 (Ala.1998); Infiniti of Mobile, Inc. v. Office, 727 So.2d 42 (Ala.1999); Colonial Sales-Lease-Rental, Inc. v. Target Auction & Land Co., 735 So.2d 1161 (Ala.1999); see also McPheeters v. McGinn, Smith & Co., 953 F.2d 771 (2d Cir.1992); O’Connor v. R.F. Lafferty & Co., 965 F.2d 893 (10th Cir.1992); In re Prudential Ins. Co. of America Sales Practice Litigation All Agent Actions, 133 F.3d 225 (3d Cir.1998); MS Dealer Service Corp. v. Franklin, 177 F.3d 942 (11th Cir.1999).
I. Equitable-Estoppel Exception
In order for a party to be equitably estopped from asserting that an arbitration agreement cannot be enforced by a nonparty, the arbitration provision itself must indicate that the party resisting arbitration has assented to the submission of claims against nonparties — claims that would otherwise fall within the scope of the arbitration provision — to arbitration. See Ex parte Napier, 723 So.2d at 53. All that is required is (1) that the scope of the arbitration agreement signed by the party resisting arbitration be broad enough to encompass those claims made by that party against nonsignatories, or that those claims be “intimately founded in and intertwined with” the claims made by the party resisting arbitration against an entity that is a party to the contract, and (2) that the description of the parties subject to the arbitration agreement not be so restrictive as to preclude arbitration by the party seeking it. See Id. In other words, the language of the arbitration agreement must be so broad that the nonparty could assert that in reliance on that language he believed he had the right to have the claims against him submitted to arbitration, and, therefore, that he saw no need to enter into a second arbitration agreement.
Hallmont argued to the trial court that the arbitration agreement included in the Green Tree contract is broad enough to include the Stanleys’ claims against Hall-mont. To determine whether Hallmont can enforce the arbitration agreement under this exception, we must look to the language of the arbitration agreement itself. As we stated above, the language of the agreement must be broad enough that it would give notice to the Stameys that they were agreeing to arbitrate claims not only between themselves and Green Tree but also between themselves and other entities involved in the transaction out of which the arbitration agreement arose, and that they were, thereby, assenting to arbitrate their claims against nonparties.
In most of the cases that have come before this Court on an equitable-estoppel claim, we have not allowed the claims to be arbitrated, because the language of the arbitration provisions limited arbitration to the signing parties, so that there had been no assent on the part of the resisting party to arbitrate claims against nonsignatories. *90 See First Family Fin. Servs., Inc. v. Rogers, 736 So.2d 553 (Ala.1999); Med Center Cars, Inc. v. Smith, 727 So.2d 9 (Ala.1998); Ex parte Isbell, 708 So.2d 571 (Ala.1997); Ex parte Martin, 703 So.2d 883 (Ala.1996); Ex parte Jones, 686 So.2d 1166 (Ala.1996); Ex parte Stallings & Sons, Inc., 670 So.2d 861 (Ala.1995); see also David F. Sawrie, Equitable Estoppel and the Outer Boundaries of Federal Arbitration Law: The Alabama Supreme Court’s Retrenchment of an Expansive Federal Policy Favoring Arbitration, 51 Vand. L.Rev. 721 (1998). In other words, within these arbitration provisions references to the parties specifically limited the claims that would be arbi-trable under those provisions. For example, the arbitration agreement at issue in Med Center Cars read:
“BUYER HEREBY ACKNOWLEDGES AND AGREES THAT ALL DISPUTES AND CONTROVERSIES OF EVERY KIND AND NATURE BETWEEN BUYER AND SELLER ARISING OUT OF OR IN CONNECTION WITH THE PURCHASE OF THIS VEHICLE WILL BE RESOLVED BY ARBITRATION WITH THE PROCEDURE SET FORTH ON THE REVERSE SIDE OF THIS BUYER’S ORDER.”
Med Center Cars, 727 So.2d at 13. (Emphasis added.) This Court wrote:
“The language of the arbitration clauses in this case [is] not broad enough to encompass claims against the nonsig-natories. The written arbitration agreements in this case expressly limit the scope of the agreements to ‘disputes, claims, and controversies’ arising between the ‘Buyer’ and the ‘Seller’ only. ... Therefore, the nonsignatories have no standing to seek enforcement of those arbitration agreements.”
Id. at 19. Because the agreement in Med Center Cars limited the claims that might be submitted to arbitration to those between the “buyer” and the “seller,” the buyer, who was resisting arbitration, could not be found to have assented to have his claims against a nonparty lender submitted to arbitration. Med Center Cars applied the rule that if the arbitration provision is specifically limited to claims that arise between the parties to the contract, then any nonparties will not be able to enforce the arbitration agreement.
However, this Court has also held that the language of other arbitration agreements was sufficiently broad to include claims against nonparties, and in regard to such agreements it has allowed nonparties to enforce the arbitration provisions against parties to the contract. See Ex parte Napier, 723 So.2d 49 (Ala.1998); Ex parte Gates, 675 So.2d 371; see also Sawrie, Equitable Estoppel and the Outer Boundaries of Federal Arbitration Law: The Alabama Supreme Court’s Retrenchment of an Expansive Federal Policy Favoring Arbitration, 51 Vand. L.Rev. 721. For example, the arbitration provision in Napier read:
“21. ARBITRATION: All disputes, claims or controversies ansing from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). This arbitration Contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER *91 THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this contract. The parties agree and understand that the arbitrator shall have all powers provided by the law and the Contract. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto [sic] the contrary, Assignee retains an option to use judicial or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by Assignee pursuant to this provision.”
Napier, 723 So.2d at 51. (Emphasis added.) That arbitration provision in Napier contained no references to the parties that would impose a limitation on what claims would be arbitrated. We held that the provision was broad enough to' include claims that were related to the contract because the language was sufficient to indicate that the party resisting arbitration had assented to submit its claims against nonparties — claims that otherwise would fall within the scope of the provision — to arbitration. Id. at 54.
Is the arbitration provision included in the Green Tree contract broad enough to indicate that the Stameys assented to have their claims against Hallmont — claims that would otherwise fall within the arbitration agreement — submitted to arbitration? In other words, is the arbitration provision involved in this action more similar to the arbitration provisions in the First Family line of cases or those in the Napier line of cases?
The arbitration clause in this present case provides in pertinent part: “ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING FROM OR RELATING TO THIS CONTRACT OR THE PARTIES THERETO SHALL BE RESOLVED BY BINDING ARBITRATION.” This provision does not specifically limit its applicability to only those claims between the Stameys and Green Tree. Instead it states that any dispute, claim, or controversy that either (1) arises out of the contract; (2) relates to the contract; or (3) relates to the parties to the contract, will be submitted to arbitration. Because the provision does not specifically limit arbitration to claims between the parties to the arbitration provision, we conclude that this arbitration provision is more like those provisions in Napier and Gates. Therefore, if the Stameys’ claims against Hallmont (1) arise out of the contract, (2) relate to the contract, or (3) relate to the parties to that contract, as the arbitration provision requires, then they were properly submitted to arbitration.
The contract between Green Tree and the Stameys is a document that represents the agreement of Green Tree to lend the Stameys the money to buy the mobile home, to buy the land, and to pay for the various installations, including the septic system. The sales contract between the Stameys and Hallmont represented Hall-mont’s sale of the mobile home to the Stameys and the promise of Hallmont to perform the various installations, including *92 the septic system. The Stameys’ claims allege conversion, fraud, and breach of contract, all in connection with the installation of the septic system. These claims are related to the Green Tree contract in that the money Green Tree lent the Sta-meys went to pay for, among other things, the installation of that same septic system.
Therefore, we conclude that the Sta-meys’ claims against Hallmont are “intimately founded in and intertwined with” the Stameys’ claims against Green Tree and that the Stameys are equitably es-topped from arguing that their claims against Hallmont are not subject to arbitration.
II. Third-party-Beneficiary Exception
The exception for third-party beneficiaries of a contract also applies in this case. This exception can arise out of at least two different sets of facts. The first occurs when a third-party beneficiary — a nonsignatory to the contract — is attempting to resist arbitration. In that situation, this Court has held that the third-party beneficiary cannot both claim the benefit of the contract and avoid the arbitration provision contained within that contract: Dyess, 709 So.2d at 451; Warren, 718 So.2d at 47 n. 4.
The second fact situation is the one present in this case — a nonsignatory third-party beneficiary attempts to enforce the arbitration provision against a signatory to the contract. In these situations where “a nonsignatory to an agreement is a third-party beneficiary ... he is able to enforce the agreement.” O’Connor, 965 F.2d at 901.
Therefore, if Hallmont is a third-party beneficiary, then it should be able to enforce the arbitration provision included in the contract between the Stameys and Green Tree. Thus, we must determine whether Hallmont is a third-party beneficiary of that contract.
A party claiming to be a third-party beneficiary, “must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party.” Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co., 619 So.2d 1328, 1329 (Ala.1993) (quoted in Dyess, 709 So.2d at 450.) In other words, Hallmont must show that the Stameys and Green Tree intended for Hallmont to receive a direct benefit from the financing contract. This issue will be determined with almost the same analysis as the estoppel issue — the intent of the parties as indicated by the language used. However, while we looked to the language of only the arbitration provision to answer the estoppel question, in order to determine the third-party beneficiary question we look to the language of the entire financing contract between the Stameys and Green Tree. We conclude that they did intend for Hallmont to receive a direct benefit.
The financing contract is a standard contract that provides for a secured transaction in which Green Tree received a security interest in the manufactured home and in which Green Tree would pay Hallmont for the manufactured home on behalf of the Stameys. In other words, this contract allows Green Tree to pay the obligation of the Stameys to Hallmont. The section of the contract entitled “ITEMIZATION OF THE AMOUNT FINANCED” sets out the amounts that were to be “paid on [the Stameys’] behalf.” Included in this chart are the amounts that were paid on behalf of the Stameys to Hallmont for the cost of the manufactured home, the cost of the land, and the cost of the installations.
Furthermore, the language of the contract clearly shows that the parties contemplated Hallmont as a third-party beneficiary. The last section of the contract states:
“WAIVER OF JURY TRIAL: I HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY THAT I HAVE IN ANY SUBSEQUENT LITIGATION BETWEEN ME AND THE SELLER, *93 OR ME AND ANY ASSIGNEE OF THE SELLER, WHERE SUCH LITIGATION ARISES OUT OF, IS RELATED TO, OR IS IN CONNECTION WITH ANY PROVISION OF THIS AGREEMENT, WHETHER THE AGREEMENT IS ASSERTED AS RELATED TO, OR IS IN CONNECTION WITH ANY PROVISION OF THIS AGREEMENT, WHETHER THE AGREEMENT IS ASSERTED AS THE BASIS FOR A CLAIM, COUNTERCLAIM OR CROSS CLAIM, OR A DEFENSE TO A CLAIM, COUNTERCLAIM OR CROSS CLAIM.”
(Emphasis added.) By this section, the Stameys clearly waived the right to a jury trial, not against Green Tree, but against Hallmont — “the seller.”
The language of the two sections mentioned in the two preceding paragraphs clearly indicates an intent on behalf of the Stameys and Green Tree to benefit Hall-mont through the financing contract. Therefore, we conclude that Hallmont is a third-party beneficiary of the financing contract and that it has all the rights that exist under that contract. As a result, Hallmont- can enforce the arbitration agreement set out in that contract. See Dyess, 709 So.2d 447; O’Connor, 965 F.2d 893; MS Dealer Serv. Corp., 177 F.3d at 947.
III. Conclusion
Hallmont has the right to enforce the arbitration agreement, under either the equitable estoppel theory or the third-party-benefieiary theory. Furthermore, we have reviewed the other issues raised by the Stameys with respect to their claims against Hallmont, and we find them to be without merit.
The trial court properly submitted the Stameys’ claims against both Green Tree and Hallmont to arbitration.
WRIT DENIED.
HOOPER, C.J., and MADDOX, SEE, LYONS, BROWN, and ENGLAND, JJ., concur.
COOK, J., concurs in the result.
JOHNSTONE, J., dissents.

. This case was originally assigned to another Justice on this Court; it was reassigned to Justice Houston on May 2, 2000.