748 So.2d 891 (1999)
PREMIERE CHEVROLET, INC., and Chris Ferguson
v.
Kathy HEADRICK.
1972001.
Supreme Court of Alabama.
November 12, 1999.
*892 R. Dale Wallace, Jr., and Cecil H. Macoy, Jr., of Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham, for appellants.
Garve Ivey, Jr., and Allison Shelley of Ivey & Ragsdale, Jasper, for appellee.
JOHNSTONE, Justice.
Kathy Headrick leased a Chevrolet Camaro automobile from Premiere Chevrolet, Inc., which required Ms. Headrick to make an initial payment of $2,417 and to sign a "lease agreement" and a "buyer's order." Premiere signed the lease agreement but not the buyer's order.
The lease agreement states:
"THIS LEASE CONTAINS THE ENTIRE AGREEMENT BETWEEN YOU AND US. There are no other agreements between you and us except those included in writing in this Lease. No change of this Lease, no course of performance and no other agreement between you and us will be binding unless in writing and signed by you and us." (Emphasis added.)
The lease agreement does not contain any arbitration provisions. The "buyer's order," however, contains the following:
"K. Purchaser acknowledges that the vehicle has been traveling in interstate commerce and had an impact on interstate commerce. In the event any dispute(s) under the terms of this contract or sale arise, (including but not limited to, the terms of the agreement, the condition of the motor vehicle sold, the conformity of the motor vehicle sold to the contract, the representations, promises, undertakings or covenants made by Premiere Chevrolet, Inc. in connection with the sale of the motor vehicle, or otherwise dealing with the motor vehicle, any terms of financing in connection therewith, or any terms of any credit life and/or disability insurance purchased simultaneously herewith, or extended service or maintenance agreement(s)), Premiere Chevrolet, Inc. and the purchaser(s) agree to submit such dispute(s) to binding arbitration, pursuant to the provisions of 9 U.S.C. § 1, Et Seq., and according to the commercial rules of the American Arbitration Association then existing, in Bessemer, Alabama.
"(A) In the event any dispute arises between the parties, as to the conformity or condition of the motor vehicle, the parties will permit a thirdparty (to be mutually agreed upon) to inspect the motor vehicle to determine the conformity and condition, and that *893 the findings of such third-party shall be binding upon Premiere Chevrolet, Inc. and the purchaser(s), in connection with any litigation, arbitration or request for adjustment, pursuant to the provision of § 7-2-515(b) of the 1975 Code of Alabama.
"(B) In the event Premiere Chevrolet, Inc. and the purchaser(s) cannot mutually agree upon a third-party to conduct such inspection, either party shall have the right to petition any court of competent jurisdiction, or panel of arbitrators, to appoint an expert to act as such third party.
"(C) The cost of such third-party inspection shall be borne equally by Premiere Chevrolet, Inc. and the purchaser(s), or as may be directed by any court or panel of arbitrators."
While the "buyer's order" is signed by Headrick, it is not signed by any representative of Premiere, although it bears signature lines for that purpose and contains one provision stating that "this order is not valid unless signed and accepted by Premiere Chevrolet, Inc." (emphasis added), and a second provision stating that "this order shall not become binding until accepted by the dealer or his authorized representative."
After taking delivery of the automobile, Headrick sued Premiere and its agent Chris Ferguson for getting the $2,417 initial payment by fraud and for failing to apply the $2,417 to Headrick's balance in breach of contract. Premiere and Ferguson[1] filed a motion to compel arbitration pursuant to the provisions of 9 U.S.C. § 1; and Headrick then amended her complaint to include claims for fraudulent suppression of the existence of the arbitration agreement, theft by deception, and unjust enrichment. The amended complaint alleged further that the buyer's order was void for "lack of mutuality."
The trial judge granted Premiere's motion to compel arbitration, and Headrick filed a motion to reconsider, which was countered by Premiere. On reconsideration, the trial judge set aside the order compelling arbitration. After the trial court denied Premiere's ensuing motion to set aside the new order denying arbitration, Premiere initiated this appeal.
The appellate courts will affirm the ruling of the trial court if it is right for any reason, even one not presented to or considered by the trial judge. McKenzie Methane Corp. v. M-W Drilling, Inc., 653 So.2d 982, 984 (Ala.1995), and Smith v. Equifax Services, Inc., 537 So.2d 463 (Ala. 1988). Moreover, we will not reverse the trial judge's denial of a motion to compel arbitration unless it is clearly erroneous. Ryan Warranty Services, Inc. v. Welch, 694 So.2d 1271 (Ala.1997).
Premiere argues that Headrick should be compelled to arbitrate her claims in accordance with the buyer's order which she signed when she leased the vehicle. Headrick argues that, because the buyer's order was never signed by any agent of Premiere and thus was never fully executed, no agreement to arbitrate ever came into existence.
Med Center Cars, Inc. v. Smith, 727 So.2d 9 (Ala.1998), involved facts which are, in all material respects, identical to the facts of this case. There we said:
"`"The purpose of the signature is to show `mutuality and assent,' which are required for a contract to be binding. Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 304 (Ala.1986)..."'
"Med Center seeks to enforce the arbitration clause contained in the buyer's order, although it did not affix its signature to the buyer's order. Although Kimberly Smith signed the buyer's order, as previously pointed out the buyer's order specifically provides that it is `Not valid unless accepted by seller or *894 its authorized representative.' Therefore, the buyer's order, which contains the arbitration clause, is not enforceable."
Med Center Cars, 727 So.2d. at 14 (quoting Ex parte Pointer, 714 So.2d 971, 972 (Ala. 1997) (quoting Crown Pontiac Inc. v. McCarrell, 695 So.2d 615, 618-19 (Ala. 1997))).
The buyer's order before us bears two similar provisions, one on the front and one on the back of the document, which require the signature of Premiere to make a contract of the document. On the front appears the caveat: "This order is not valid unless signed and accepted by Premiere Chevrolet, Inc....," and after that language appears a blank signature line with the preprinted words, "Accepted-PREMIERE CHEVROLET, INC.," and "Must be accepted by a Manager authorized by the Corp." Likewise, on the back, in paragraph L., immediately after the arbitration provisions, appears the caveat: "This order shall not become binding until accepted by dealer or his authorized representative...," and below this provision appears a blank signature line with the preprinted words "Accepted" and "Premiere Chevrolet, Inc. (Must be dealer or authorized representative)." Neither of these signature lines bears a signature. No signature for Premiere or its agent appears anywhere on the buyer's order. Under these facts, and under the law recognized by Med Center Cars, supra, the trial judge was correct in ruling that there was no enforceable agreement to arbitrate.
Moreover, the lease agreement, signed by both parties, clearly states that it is the sole agreement between them. It provides further that no other agreement between the parties will be binding unless in writing signed by both parties. Nowhere does the lease mention arbitration.
Premiere drafted and signed the lease and, in doing so, bound itself to the terms contained therein. Yet Premiere would have us invalidate these provisions of the lease agreement by forcing Headrick to adhere to the terms stated in the buyer's order not signed by Premiere. To accept Premiere's argument would require the Court to flout a lease contract fully executed by both parties in signification of their intention to be mutually bound by it.
Premiere argues that, regardless of whether it signed the buyer's order, its actions demonstrate its approval of the contract and its waiver of any requirement for an officer's signature. In essence, Premiere argues that its performance in delivering the car and accepting the initial payment should "ratify and confirm [the buyer's order] even though [its] actual signature is not affixed." Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 305 (Ala.1986). However, the buyer's order does not state by its terms that Premiere must deliver anything to Headrick. It states merely that Headrick "hereby agrees to purchase from Premiere Chevrolet, Inc.... for a purchase price as hereinafter set out, the following [vehicle]." The buyer's order next contains a laundry list of disclaimers to insulate Premiere from a variety of problems and finally contains the arbitration section. Because the text of the buyer's order requires no active performance of Premiere, no doctrine of performance to manifest assent is applicable. Premiere's delivery of the vehicle, and any other act of performance, constituted performance in accordance with the lease agreement, not the buyer's order.
Moreover, the buyer's order requires both acceptance and a signature by Premiere. As already revealed, the buyer's order provides: "This order is not valid unless signed and accepted by Premiere...." (Emphasis added.) The requirements for signature and acceptance are conjunctive, not disjunctive. This document, drafted and imposed by Premiere, must be construed strictly against the drafter, Lilley v. Gonzales, 417 So.2d 161 (Ala.1982), and Jewell v. Jackson & Whitsitt Cotton Co., 294 Ala. 112, 313 So.2d 157 *895 (1975), so as to require the signature of Premiere in addition to acceptance by Premiere.
Premiere further cites the principle that "any written contract, though signed by only one party, will bind the other if he accepts the writing." 2 Williston on Contracts § 6:43, pp. 468-69 (4th ed.1991). (Emphasis added.) The fatal flaw in this argument is that the express terms of both the lease agreement and the buyer's order emphatically reject the buyer's order as a part of the contract, as already demonstrated by the analyses of both documents in this opinion. Headrick's acceptance of the car and payment for it, to the extent that she has paid, are entirely attributable to the lease.
Finally, Premiere argues that the validity and enforceability of the buyer's order should have been determined by an arbitrator. In effect, Premiere urges that the trial judge lacked jurisdiction over the matter and committed error in deciding the issue of arbitrability.
In her original complaint Headrick did not challenge the validity of the lease agreement and did not seek any relief voiding or rescinding the lease. She did not allege that the defendants defrauded her into entering the lease. Rather, she claimed the defendants defrauded her into parting with her $2,417 initial payment by falsely telling her the payment would apply to reduce the balance shown in the lease.
Only after the defendants moved to compel arbitration on the ground of the arbitration language in the buyer's order did Headrick, claiming that she had only then learned of the existence of the arbitration language, attack the validity of the buyer's order containing the language. She grounded this attack solely on the theory that the defendants fraudulently included the arbitration language and suppressed its existence.
Further, her alternate ground for invalidating the arbitration language is the absence of Premiere's signature on, or acceptance of, the buyer's order. The only writing she attacks is the arbitration section of the buyer's order.
Thus Headrick's challenge is specific to the existence of the obligation to arbitrate. She claims she is not contractually bound to arbitrate. We would be begging the question, that is, prejudging against Headrick the crucial issue in this case, if we were to decide, as Premiere urges, that she is contractually bound to engage and to empower an arbitrator to decide whether she is contractually bound to engage and to empower an arbitrator. Rather, a disagreement between the parties about whether they agreed to arbitrate presents a legal issue which must be resolved by the court.
In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the United States Supreme Court rules:
"[T]he federal court is instructed to order arbitration to proceed once it is satisfied that `the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue.'11 Accordingly, if the claim is fraud in the inducement of the arbitration clause itselfan issue which goes to the `making' of the agreement to arbitratethe federal court may proceed to adjudicate it.... We hold, therefore, that ... a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.
"11 Section 4 [of the Federal Arbitration Act, 9 U.S.C. § 1 et seq.,] reads in part: `The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.'" *896 388 U.S. at 403-04, 87 S.Ct. 1801. Here the making, vel non, of the agreement to arbitrate between Premiere and Headrick is the core issue, requiring judicial resolution.
The United States Supreme Court reaffirmed and advanced the Prima Paint holding in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). There, the Court held that courts, in determining whether the parties have agreed to submit the issue of arbitrability itself to arbitration, should not assume that the parties have agreed to "arbitrate arbitrability" unless the evidence is clear and unmistakable that they have so agreed. On this issue, the presumption is just the opposite of the presumption which applies when a merits-related dispute is involved. In the latter instance, when the evidence is unclear whether a merits-related dispute is arbitrable, the presumption favors arbitration. Moses H. Cone Memorial Hosp. v. Mercury Constr. Co., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). On the other hand, when the issue is whether the parties agreed to arbitration itself, the presumption opposes arbitration. First Options, supra. In holding that the court should decide the issue of arbitrability when the evidence is not clear and unmistakable that the parties have agreed to submit the question of arbitrability to arbitration, the First Options Court reasons:
"[T]he ... question ... `who (primarily) should decide arbitrability' ... is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers.... And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the `who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide."
First Options, 514 U.S. at 945, 115 S.Ct. 1920 (internal citations omitted).
Following the precedent set by the United States Supreme Court in Prima Paint, and refined in First Options, we hold that, because the evidence is not clear and unmistakable that the parties here agreed that any dispute about arbitrability itself would be decided by the arbitrator, the trial court correctly decided this issue. We must not reverse the trial judge's ruling unless it is clearly erroneous. First Options and Ryan Warranty, supra. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
HOUSTON, COOK, and ENGLAND, JJ., concur.
SEE and LYONS, JJ., concur in part in the rationale and concur in the result.
HOOPER, C.J., and MADDOX and BROWN, JJ., concur in the result.
SEE, Justice (concurring in part in the rationale and concurring in the result).
I concur in the denial of arbitration of the claims filed by the plaintiff, Kathy Headrick, against Premiere Chevrolet, Inc., and Chris Ferguson (collectively, "Premiere"). The main opinion concludes that the arbitration provision contained in the buyer's order is not binding because Premiere did not sign the buyer's order. This holding is based on Part I(A) of this Court's opinion in Med Center Cars, Inc. v. Smith, 727 So.2d 9 (Ala.1998), from which I dissented. In Part I(A) of Med Center Cars, this Court affirmed the trial court's order denying the automobile seller's motion to compel arbitration of the automobile buyers' claims, because the seller "did not affix its signature to the buyer's order" and the buyer's order provided that it was "Not valid unless accepted by seller or its authorized representative." Id. at 14-15. *897 I joined Justice Maddox's dissent as to Part I(A) because, as Justice Maddox pointed out, nowhere in the buyer's order did it state that the order was not valid unless it was signed by the seller, and because the seller had "accepted" the buyer's order by selling and delivering the car in accordance with the terms of the order.
This case is distinguishable from Med Center Cars. The buyer's order in this case states, "this order is not valid unless signed and accepted by PREMIERE CHEVROLET, INC...." Below this statement is a signature line for Premiere. It is undisputed that Premiere did not sign the buyer's order. Thus, the terms of the buyer's order in this case are different from the terms of the buyer's order in Med Center Cars; in this case, Premiere's signature on the buyer's order was an express condition precedent to the existence of a contract. See Ex parte Payne, 741 So.2d 398, 400 (Ala.1999). Premiere and Headrick may, based on their conduct, have some form of agreement between them; nevertheless, because Premier did not sign the buyer's order, as was required by its express terms, the buyer's order, and the arbitration provision contained in it, are not enforceable. See id. at 400 (holding that the car seller could not enforce the arbitration provision contained in the purchase order because the condition precedent to the existence of a binding contract expressly set forth in the purchase order did not occur).
LYONS, Justice (concurring in part in the rationale and concurring in the result).
I concur with the main opinion in its conclusion that Premiere Chevrolet, Inc., cannot compel the plaintiff Headrick to arbitrate, because of the absence of a signature for Premiere on the document containing the agreement to arbitrate. Compare Med Center Cars, Inc. v. Smith, 727 So.2d 9, 22 (Ala.1998) (Maddox, J., dissenting) ("In the Med Center Cars case [one of six cases dealt with under the style Med Center Cars], the Buyer's Order did not specifically state that it would not be effective unless it was signed by a Med Center Mazda representative."). Here, as the main opinion points out, the buyer's order provided that it was "not valid unless signed and accepted by Premiere Chevrolet, Inc."
While I dissented in Med Center Cars for its refusal to recognize performance as evidence of acceptance, I concur with the main opinion in this present case, insofar as it finds the absence of Premiere's signature fatal to Premiere's attempt to enforce the agreement containing the arbitration clause. Otherwise, I concur in the result.
NOTES
[1] Because Ferguson's right, if any, to compel arbitration is derivative of Premiere's, if any, this opinion will refer collectively to both defendants as "Premiere."