HOUSTON, Justice.
The plaintiff Creighton E. Miller, administrator of the estate of Matthew Williams, deceased, appeals from a summary judgment in favor of the defendants Arco Marine, Inc.; Atlantic Richfield Company (“Arco”); Unocal Corporation; National Bulk Carriers, Inc. (“N.B.C.”); and Chevron USA, Inc. (“Chevron”), in a wrongful-death action. Williams died in 1994, at age 71, of aspiration pneumonitis secondary to multiple myeloma. Williams had been a merchant mariner, and he had sailed primarily aboard tanker vessels from 1945 to 1981; Miller alleged that Williams had developed multiple myeloma as a consequence of shipboard exposure to benzene and benzene-containing products aboard ships owned by the defendants named above.[1] The defendants moved for a summary judgment, supporting their motion by deposition testimony indicating that Williams most likely had not had a sufficient exposure to benzene aboard any vessel owned by the defendants and that there is no general acceptance in any scientific field of the proposition that benzene exposure is associated with multiple mye-loma in humans. Williams died before this action was filed, and no testimony or other record exists to indicate what exposures, if any, he experienced aboard vessels belonging to Arco Marine, Arco, Unocal, and N.B.C. Therefore, the trial court properly entered the summary judgment for those four defendants.[2]
Miller offered the following evidence in opposition to the summary-judgment motion insofar as it related to the defendant Chevron:
1) Williams served aboard the vessel 'Gulfvictor from November 26, 1956, to February 1, 1957, and Miller identified Rudolph Foreman as a person who could testify about Williams’s exposures aboard that vessel. However, Foreman was discharged from the Gulfvictor on November 26, 1956, the date Williams boarded the ship; thus, they never served on the vessel together, and Foreman did not provide any evidence regarding any exposures Williams had to benzene aboard that vessel.
2) Williams served aboard the vessel Gulfmills in 1959 and 1960. Miller identified Israel Rangel as a witness who could describe Williams’s exposures aboard that vessel. However, Range! did not remem *341 ber Williams, and he did not remember any cargoes that were aboard the vessel or where the vessel went during that time that could have exposed mariners to benzene or benzene-containing products. Therefore, Rangel was unable to identify any exposures that Williams had aboard the Gulfmills.
3) Williams served aboard the vessel Gulfjaguar in 1959, 1960, 1961, and 1962, and Miller identified Pete Sandifer, Isidore Thibeault, and Harvey Moss as witnesses who could describe Williams’s exposure aboard that vessel. None of these witnesses was able to describe any exposures to benzene or benzene-containing products that Williams experienced aboard that vessel.
4) Williams served aboard the vessel Gulfking in 1963 and 1964, and Miller identified Robert Alexander as a witness who could describe Williams’s exposures aboard that vessel. Alexander described himself as a friend of Williams, recalled seeing Williams on that vessel, recalled that the vessel carried aviation fuel, refined gasoline, and crude oil, and that the crewmembers were exposed to cargo vapors during loading and unloading. He could not recall whether the tanks were cleaned on that vessel while he ' and Williams were aboard.
5) Williams served aboard the vessel Gulfqueen in 1964, and Miller identified Wilfred Lambier as a witness who could describe Williams’s exposures aboard that vessel. Lambier did not recall Williams and could not describe any of Williams’s exposures aboard that vessel.
6) Williams served aboard the vessel Gulflion on occasions between 1965 and 1981, and Miller identified Hercules Spi-cer, Henry Terrell, Joseph Hall, Chester Koczynski, and Augustine Martinez as witnesses who could describe Williams’s exposures aboard that vessel. Spicer was aboard the Gulflion with Williams for one month in 1970, but he did not recall Williams or the cargoes carried by that vessel, and he could not testify as to what exposures, if any, Williams had aboard that vessel. Terrell was aboard the Gul-flion with Williams between 1964 and 1974, but he did not recall Williams (the individual he had said he was thinking of was from Jacksonville, Florida, not from Alabama). Hall served with Williams for a month in 1974 and said he thought he knew him; however, the crewman he was thinking of was Caucasian and Williams was African-American, so Hall could not describe any exposures that Williams may have experienced on this vessel. Koczyn-ski had no recollection of being on the Gulflion and no recollection of Williams. Accordingly, he could not describe any exposures that Williams had experienced. Martinez served with Williams aboard the Gulflion but offered no testimony in opposition to the defendants’ motion for summary judgment.
The general testimony of crew-member witnesses, viewed in a light most favorable to Miller, the nonmovant, was that the loading process created an environment in which ordinary and able-bodied seamen would sometimes be exposed to cargo vapors, and that the unloading process could also result in such exposures, although to a lesser degree. Aso, such exposures could have occurred during tank-cleaning and/or ballasting operations. However, the record contains no evidence indicating that Williams engaged in these activities. None of these activities occurred on a daily basis. The evidence indicates there was no significant exposure to cargo vapors aboard tankers of this type while they were underway at sea and that these vessels spent most of their time at sea.
In Justice Cook’s dissent, he states his belief that the evidence set out above amounts to “extensive testimony indicating that [Williams’s] duties would have involved substantial exposure to benzene.” 767 So.2d at 343. Of all of the witnesses, only Robert Aexander was able to place Williams on a vessel that was carrying a *342 benzene-containing cargo that Williams might have been exposed to. Even in the situation described by Alexander, Williams would have been exposed, along with the rest of the vessel’s crew, only during the loading and unloading of the cargo. As we pointed out earlier, the testimony offered by the plaintiff leaves open a number of gaps in the connection between Williams and any benzene exposure. Justice Cook’s dissent presumes that those gaps are somehow filled, and, therefore, that there is substantial evidence indicating that Williams was exposed to benzene. However, we conclude that the evidence simply did not prove that Williams was substantially exposed to benzene.
The expert witnesses proffered by Miller all predicated their opinions upon the proposition that Williams had experienced substantial exposure to benzene over the course of his work on the various ships mentioned above. As' we have already stated, the record contains no evidence of substantial exposure; therefore, the expert testimony offered by Miller is insufficient to defeat Chevron’s summary-judgment motion.
The summary judgment for Arco Marine, Arco, Unocal, N.B.C., and Chevron is affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, SEE, LYONS, BROWN, and ENGLAND, JJ„ concur.
COOK, J., concurs in part and dissents in part.
JOHNSTONE, J., recuses himself.

. The plaintiff had voluntarily dismissed numerous other defendants before the court entered the summary judgment for those named above.

. An appellate court will affirm a trial court's judgment if it is right for any reason, even one not presented to or considered by the trial judge. Premiere Chevrolet, Inc. v. Headrick, 748 So.2d 891 (Ala.1999); McKenzie Methane Corp. v. M-W Drilling, Inc., 653 So.2d 982, 984 (Ala.1995).