We are now addressing Mae Clark's[1] second petition to this Court for a writ of mandamus directing the Etowah County Circuit Court to vacate its order compelling her to arbitrate her claims against Blue Cross and Blue Shield of Alabama ("Blue Cross"). See Ex parte Shelton,738 So.2d 864 (Ala. 1999) ("Shelton I"). In Shelton I, this Court denied the petition of Shelton and Clark for a writ of mandamus because the materials submitted in support of the first petition did not warrant relief.
 Operative Facts Common to Shelton I and This Case ("Shelton II")
In 1991, Clark applied to Blue Cross for a Medicare supplement policy, referred to as a "C Plus Medicare Select Contract." Blue Cross issued a "C Plus" contract of insurance to Clark. The contract of insurance provided, in pertinent part:
"Contract Revisions
 "By giving 30 days written notice to you, or your group, we may change the fees you pay for coverage under this Contract or any provision of this Contract. If you pay any fees after the notice, you accept the new fees or changes in the Contract.
 "The Contract can only be changed by written amendments, endorsements, revisions signed by one of our officers and sent by us to you or your group. None of our officers, employees, or agents can make any oral changes, such as by telephone. Nor may anyone waive or vary any provisions of this Contract except in writing, signed by one of our officers."
(Emphasis added.)
 "Effective July 1, 1992, [Blue Cross] amended its C Plus contracts to include a mandatory binding-arbitration provision. In the summer of 1992, it sent a newsletter entitled `C Plus UPDATE' to all C Plus insureds; that newsletter noted the amendment to the contract and stated that an insured's continued payment of premiums constituted acceptance of the arbitration provision. Thereafter, in November 1993, [Blue Cross] sent a revised contract containing the arbitration clause, along with a cover letter to all C Plus insureds."
Shelton I, 738 So.2d at 867.
In February 1997, Clark sued Blue Cross on the theory that Blue Cross had wrongfully sold her a worthless C Plus policy. Because Clark was eligible for Medicaid benefits, she was ineligible for Medicare benefits and for C Plus benefits. Blue Cross moved to dismiss or, in the *Page 253 
alternative, to compel arbitration. Following arguments of counsel, the trial court granted the motion to compel arbitration filed by Blue Cross and stayed further proceedings. On February 4, 1998, Clark moved to alter, to amend, or to vacate the order compelling arbitration or, in the alternative, for a jury trial on the issue whether Clark had agreed to arbitration. On February 6, 1998, Blue Cross responded to Clark's motion. On February 10, 1998, Clark requested oral argument on her motion. On February 11, 1998, Clark petitioned this Court for a writ of mandamus.
On March 3, 1998, in the trial court, Clark filed an amended motion to alter, to amend, or to vacate the order compelling arbitration on the ground that the McCarran-Ferguson Act prohibited arbitration clauses in insurance contracts. On March 4, 1998, the trial court conducted a hearing "on Clark's request for oral argument; received submissions from Clark; and held the case in abeyance" until this Court ruled on Clark's petition for a writ of mandamus. Shelton I, 738 So.2d at 867. On March 12, 1998, Clark filed an amended petition for a writ of mandamus. On June 11, 1999, this Court denied Clark's petition. This Court addressed Clark's amendment to her petition with the following observation:
 "Clark is not precluded from now raising in the trial court her McCarran Act issue as a defense to BCBS's motion to compel arbitration. Likewise, BCBS may now raise the issue whether 42 U.S.C. § 1395ss
preempts state law by specifically authorizing the inclusion of arbitration provisions in Medicare Select policies. If the trial judge finds for Clark and holds that state law, not federal law, controls the arbitration issue, then BCBS may appeal from that order. A.G. Edwards Sons, Inc. v. Clark, 558 So.2d 358
(Ala. 1990). If the trial judge finds for BCBS and holds that federal law authorizes arbitration provisions in Medicare Select policies in Alabama, then Clark may again seek mandamus review of the trial judge's order. Ex parte Alexander, 558 So.2d 364
(Ala. 1990)."
Shelton I, 738 So.2d at 872.
 Operative Facts after Shelton I
Following our denial of her petition for a writ of mandamus, Clark filed in the Etowah County Circuit Court, among other additional things, "a memorandum against arbitration"; a motion to strike the supplemental affidavit of Melissa Brisendine, an employee of Blue Cross; a memorandum regarding the McCarran-Ferguson Act; and an affidavit from Billy Shelton. In her memorandum against arbitration, Clark asserted that the 1992 and 1993 documents purporting to add arbitration provisions to the 1991 contract of insurance were ineffective because they were not signed by an officer of Blue Cross as required by the 1991 contract of insurance. Blue Cross moved to strike an affidavit by Billy Shelton and submitted a "second" brief in support of the motion to compel arbitration. Blue Cross did not dispute Clark's assertion that the 1992 "amended contract" and the 1993 "revised contract" were not signed by an officer of Blue Cross. Likewise, Blue Cross did not dispute Clark's claim that the 1992 "amended contract" and the 1993 "revised contract" were invalid because of the absence of a Blue Cross officer's signature. Rather, Blue Cross argued that the effectiveness of the "policy amendment" had already been decided and that "there is no reason to re-open the issue." Following oral arguments by counsel, the trial court entered an order stating, in pertinent part:
 "Based upon the briefs and supporting materials submitted by the parties and *Page 254 
 the arguments made at the September 24, 1999 hearing, the Court hereby reaffirms its previous order sending all of [Clark's] claims to arbitration. [Clark's] arguments regarding the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq., have been rejected by the Alabama Supreme Court in American Bankers Insurance Co. v. Crawford, [757 So.2d 1125 (Ala. 1999)]. Moreover, the decision in Crawford effectively moots Blue Cross's contentions regarding 42 U.S.C. § 1395ss. . . ."
In her present petition, Clark asserts, among other theories, that no valid agreement to arbitrate exists inasmuch as:
 "Blue Cross did not comply with its own contract provisions for amending the policy. The written contract provides a provision for changing any
provision of the policy with 30 days notice with the written signed amendment being sent to the insured:
 "`Contract Revisions. By giving 30 days written notice to you, or your group, we may change the fees you pay for coverage under this Contract or any provision of this Contract. If you pay any fees after the notice, your accept the new fees or changes in the Contract.
 "`The Contract can only be changed by written amendments, endorsements, revisions signed by one of our officers and sent by us to you or your group. None of our officers, employees, or agents can make any oral changes, such as by telephone. Nor may anyone waive or vary any provisions of this Contract except in writing, signed by one of our officers.' (Emphasis added.) (Ex. 2, p. 10.)
 "The contract does not provide for changing the terms of the contract by mailing an amended policy which has not been `signed.' The policy itself requires a written amendment signed by an officer. (Ex. 2, p. 10.) There is no provision in the policy for a presumption of receipt by mail or a provision for changing the contract by newsletter or an unsigned amended policy.
 "[Blue Cross] did not follow its own procedure. [Blue Cross] has never produced a signed amended policy. The process utilized to amend the contract was not in accord with the contract of insurance and not in accord with Alabama law."
Petition, pp. 11-12. In its brief to this Court, Blue Cross does not
dispute that the 1992 "amended contract" and the 1993 "revised contract" were not signed by an officer of Blue Cross. In fact, Blue Cross never addresses Clark's claim that the 1992 and 1993 documents were ineffective to add arbitration provisions to the 1991 insurance contract because they lacked a Blue Cross officer's signature. Instead, Blue Cross asserts that
 "Clark's argument to the effectiveness of the policy amendment was not ripe for reconsideration by Judge Stewart. This issue was decided initially by Judge Stewart in January, 1998, and Judge Stewart's holding that the policy amendment was effective was affirmed by this Court in its June 11, 1999 opinion. See Shelton, 738 So.2d at 870-872. Therefore, this aspect of Clark's second mandamus petition is without merit."
Brief, p. 17. Blue Cross argues that this Court in Shelton I, supra, "affirmed" "Judge Stewart's holding that the policy amendment was effective."
 Analysis and Conclusions
First, we observe that this Court did not "affirm" the holding of the trial judge that the arbitration provisions in the 1992 "amended contract" and the 1993 "revised contract" were effective. In Shelton *Page 255 I, we said "[b]ased on this sparse record, we cannot hold that Clark has a clear legal right to have the trial judge's arbitration order set aside." 738 So.2d at 870. Second, this Court has held, "the denial [of a petition for a writ of mandamus] does not operate as a binding decision on the merits." R.E. Grills, Inc. v. Davison, 641 So.2d 225, 229 (Ala. 1994). "[T]he denial of relief by mandamus does not have res judicata effect." Cutler v. Orkin Exterminating Co., 770 So.2d 67, 69 (Ala. 2000); Jack Ingram Motors, Inc. v. Ward, 768 So.2d 362 (Ala. 1999);Quality Truck Auto Sales, Inc. v. Yassine, 730 So.2d 1164, 1167 (Ala. 1999). Therefore, the denial by this Court of Clark's first petition for a writ of mandamus did not preclude Clark from asserting in the trial court and in her second petition for a writ of mandamus that the 1992 "amended contract" and the 1993 "revised contract" were ineffective because they were not signed by an officer of Blue Cross.
"A petition for a writ of mandamus is the proper means by which to challenge a trial court's order to compel arbitration."[2] Ex parteNapier, 723 So.2d 49, 52 (Ala. 1998). Because the sole question is whether the parties agreed to arbitrate, our duty according to our standard of review when, at the instance of either party, we review the ruling of the trial court on a motion to compel arbitration, is to determine de novo, whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review. Ex parteRoberson, 749 So.2d 441 (Ala. 1999).
"There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." Volt Information Sciences, Inc. v. Board of Trustees ofLeland Stanford Junior University, 489 U.S. 468, 476 (1989). "`[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"AT T Techns., Inc. v. Communications Workers of America, 475 U.S. 643,648 (1986) (quoting United Steelworkers v. Warrior Gulf Navig. Co.,363 U.S. 574, 582 (1960)). See also A.G. Edwards Sons, Inc. v. Clark,558 So.2d 358, 362 (Ala. 1990). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago v. Kaplan, 514 U.S. 938,944 (1995). "`If there is doubt as to whether such an agreement [to arbitrate] exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.'" Allstar Homes, Inc. v. Waters, 711 So.2d 924, 929 (Ala. 1997) (citation omitted). "`A [trial] court's duty in determining whether the making or the performance of an agreement to arbitrate is in issue is analogous to its duty in ruling on a motion for summary judgment.'" Id. at 930 (citations omitted).
Recently, in Blue Cross Blue Shield of Alabama v. Woodruff,803 So.2d 519 (Ala. 2001), we addressed the exact issue *Page 256 
presented here — whether the absence of a signature of an officer of Blue Cross from the 1992 purportedly amended C Plus contract and the 1993 purportedly revised C Plus contract containing arbitration provisions prevented those documents from constituting valid agreements to arbitrate, even though the documents had been sent to all C Plus insureds. In Woodruff, we stated:
 "This Court succinctly summarized the burden of proof in this regard in note 4 to its opinion in Ex parte Caver, 742 So.2d 168, 172 (Ala. 1999):
 "`A motion to compel arbitration is analogous to a motion for a summary judgment. The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce. Once such a prima facie showing has been made, the burden shifts to the party opposing arbitration to present some evidence indicating that there is no arbitration agreement subject to specific enforcement under the [Federal Arbitration Act]. If the party opposing arbitration presents sufficient evidence to create a fact question as to the existence of a valid arbitration agreement, then the issue must be resolved by the trial court or by a jury, if one is requested.'
"(Citations omitted.)
 "Accordingly, Blue Cross had the burden of proving, among other things, the existence of a valid contract containing an agreement to arbitrate. . . .
". . . .
 "In construing an arbitration clause, a court must resolve any ambiguities as to the scope of the arbitration agreement in favor of arbitration. This is so because `[w]hen an arbitration agreement is at issue . . . the [Federal Arbitration Act] precludes a court from applying general rules of contract construction in a manner that would disfavor arbitration.' Birmingham News Co. v. Lynch, 797 So.2d 440, 443 (Ala. 2001). However, `[f]ederal substantive law provides that the question of whether the parties agreed to arbitrate their dispute is to be governed by ordinary state law principles relating to the formation of contracts.' Ex parte Roberson, 749 So.2d at 445.
 "In Premiere Chevrolet Inc. v. Headrick, [748 So.2d 891
(Ala. 1999)], Headrick had leased an automobile from Premiere Chevrolet, Inc., pursuant to a `lease agreement' signed by both parties. The lease agreement contained a clause providing that the lease constituted the entire agreement between the parties and providing further that `no other agreement between you and us will be binding unless in writing and signed by you and us.' The lease agreement itself did not contain any arbitration provisions, but `a buyer's order,' which Headrick also signed, did contain an arbitration provision. However, this Court stated:
 "`While the "buyer's order" is signed by Headrick, it is not signed by any representative of Premiere, although it bears signature lines for that purpose and contains one provision stating that "this order is not valid unless signed and accepted by Premiere Chevrolet, Inc.," (emphasis added [in Premiere Chevrolet]), and a second provision stating that "this order shall not become binding until accepted by the dealer or his authorized representative."'
"748 So.2d at 893.
 "Headrick sued Premiere Chevrolet, alleging fraud and breach of contract. Premiere Chevrolet filed a motion to compel arbitration. Headrick amended *Page 257 
her complaint to include claims alleging fraudulent suppression, theft by deception, and unjust enrichment, and further alleging that the buyer's order was void for `lack of mutuality.' The trial judge initially granted Premiere Chevrolet's motion to compel, but upon reconsideration set aside that order, denied the motion to compel arbitration, and then denied Premiere Chevrolet's subsequent motion to set aside the new order. Premiere Chevrolet appealed. Headrick argued on appeal that `because the buyer's order was never signed by any agent of Premiere and thus was never fully executed, no agreement to arbitrate ever came into existence.' 748 So.2d at 893. Relying principally on our opinion in Med Center Cars, Inc. v. Smith, 727 So.2d 9 (Ala. 1998), this Court upheld the trial court's order denying arbitration, pointing out that the lease agreement clearly provided that it was the sole agreement between the parties and that no other agreement between the parties would be binding unless it was in writing and signed by both parties.
 "`Moreover, the buyer's order requires both acceptance and a signature by Premiere. As already revealed, the buyer's order provides: "This order is not valid unless signed and accepted by Premiere. . . ." (Emphasis added [in Premiere Chevrolet].) The requirements for signature and acceptance are conjunctive, not disjunctive. This document, drafted and imposed by Premiere, must be construed strictly against the drafter, Lilley v. Gonzales, 417 So.2d 161
(Ala. 1982), and Jewell v. Jackson Whitsitt Cotton Co., 294 Ala. 112, 313 So.2d 157 (1975), so as to require the signature of Premiere in addition to acceptance by Premiere.'
 "748 So.2d at 894-95. See also Rogers Foundation Repair, Inc. v. Powell, 748 So.2d 869, 872 (Ala. 1999).
". . . .
 "We conclude that the trial court would not have been in error had it determined that, with respect to the attempted revisions of the C Plus policy in 1992 and 1993, Blue Cross did not comply with the precondition it established in the 1991 contract, i.e., that that contract could be changed only `by written amendments, endorsements, and revisions signed by one of our officers and sent by us to you.' Our holding is necessarily predicated on the evidence before the trial court when it denied arbitration. Although counsel for Blue Cross asserted at oral argument, after counsel for Brooks had raised the issue we now address, that appropriately signed amendatory documents had been filed with the Department of Insurance, he acknowledged that those documents were not before the trial judge and are not a part of the record before this Court. Although the plaintiffs did not argue at trial that there was no proof of an amendment, endorsement, or revision `signed by one [Blue Cross's] officers and sent by [it] to [Brooks],' Blue Cross had the burden of proving, nonetheless, the existence of a valid written arbitration agreement. In this case, because Blue Cross explicitly stated as a condition precedent in the 1991 contract that that contract could be changed only by written amendments, endorsements, or revisions signed by one of its officers and sent by it to the policyholder; failure of proof in that regard was fatal to Blue Cross's attempt to prove the existence, in the form of the July 1, 1992, endorsement to the C Plus Contract and the 1993 revised C Plus Contract, of a valid enforceable arbitration agreement."
803 So.2d at 527.
After our denial of Clark's first petition for a writ of mandamus, when *Page 258 
Clark claimed to the trial court that, for the lack of a Blue Cross officer's signature, the 1992 "amended contract" and the 1993 "revised contract" were ineffective to add arbitration provisions to the 1991 contract of insurance, the burden was on Blue Cross to prove the existence of a contract "calling for arbitration and proving that that contract involves a transaction affecting interstate commerce."Woodruff, 803 So.2d at 523 (quoting Ex parte Caver, 742 So.2d at 172
n. 4). Absent proof by Blue Cross that either the 1992 "amended contract" or the 1993 "revised contract" was, in fact, signed by a Blue Cross officer as required by the 1991 contract, Clark was due holdings by the trial court that no arbitration provisions had been added to the 1991 contract, that therefore no arbitration agreement had been made, and that therefore the motion to compel would be denied. Woodruff, supra. The absence of any factual dispute on Clark's claim to this effect obviated any jury trial on the issue of the existence of a valid agreement to arbitrate. Thus, the trial court erred in reaffirming its prior order relegating Clark's claims to arbitration. Therefore, we issue a writ of mandamus directing the trial court to vacate its order compelling Clark to arbitrate her claims against Blue Cross and to enter an order denying the motion of Blue Cross to compel arbitration.
WRIT GRANTED.
Moore, C.J., and Houston, See, Lyons, Brown, Harwood, Woodall, and Stuart, JJ., concur.
[1] Billy Shelton has power of attorney over Mae Clark's affairs. Because Mae Clark is mentally incapacitated, Shelton is an additional plaintiff acting on Clark's behalf.
[2] See Rule 4(d), Ala.R.App.P., as amended effective October 1, 2001. By that amendment an order either granting or denying a motion to compel arbitration will be reviewable by appeal.