On June 12, 2002, Hessie James sued the SouthTrust Corporation and SouthTrust Bank of Russell County (hereinafter jointly referred to as "SouthTrust") in the Russell Circuit Court. James sought compensatory and punitive damages from SouthTrust on claims of conversion, negligence, wantonness, willful misconduct, and fraud. On July 11, 2002, SouthTrust filed its answer, denying liability. On August 26, 2002, SouthTrust filed a motion to dismiss or, in the alternative, to stay the proceedings and to compel arbitration. On November 26, 2002, one day after a hearing on the issue, the trial court, without making any findings of fact or stating any conclusions of law, denied SouthTrust's motion. SouthTrust appeals pursuant to Rule 4(d), Ala.R.App.P.
The standard of review for the denial of a motion to compel arbitration is well established. As stated in Wolff Motor Co. v.White, 869 So.2d 1129, 1131 (Ala. 2003):
 "`This Court reviews de novo a trial court's denial of a motion to compel arbitration.' Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 745 (Ala. 2000). `A "party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce."' Tefco Fin. Co. v. Green, 793 So.2d 755, 758 (Ala. 2001) (quoting Ex parte Caver, 742 So.2d 168, 172 n. 4 (Ala. 1999)). The party moving for arbitration must `"produce some evidence which tends to establish its claim."' Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 (Ala. 1995) (opinion on application for rehearing) (quoting In re American Freight Sys., Inc., 164 B.R. 341, 345
(D.Kan. 1994))."
The controversy centers around a checking account opened by James on or about December 5, 2001. To fund the account, James deposited a check, drawn on the First Bank of Chicago, payable through FCC National Bank, located in Wilmington, Delaware, in the amount of $14,342.60. One prerequisite for opening the account was signing a deposit agreement. The deposit agreement James signed states that it includes and incorporates South Trust's "Rules and Regulations Governing Deposit Accounts," internal rules adopted by SouthTrust (hereinafter "the rules"). The deposit agreement also states that James agreed to be bound by the rules, including any amendments to the rules. James admits that she was given a copy of the rules when she opened the account, as the deposit agreement itself stated. Contained within those rules was an arbitration provision, last amended on September 4, 2001, which, in relevant part, states:
 "BY OPENING OR MAINTAINING YOUR ACCOUNT, YOU AND WE AGREE THAT ANY CONTROVERSY BETWEEN YOU AND US, OR BETWEEN YOU AND ANY OF OUR OFFICERS, EMPLOYEES, AGENTS OR AFFILIATED ENTITIES, THAT ARISES OUT OF OR IS RELATED TO YOUR ACCOUNT, OR ANY PRODUCT OR SERVICE RELATED TO YOUR ACCOUNT, OR ANY ADVERTISEMENT, INDUCEMENT, DISCLOSURE OR ANY AGREEMENT RELATED TO YOUR ACCOUNT OF ANY SUCH PRODUCT OR SERVICE, OR THAT QUESTIONS THE ENFORCEABILITY OF THIS AGREEMENT TO ARBITRATE, OR ANY RELATIONSHIP *Page 1120 
THAT RESULTS FROM ANY OF THE FOREGOING, WHETHER THE CONTROVERSY IS NOW EXISTING OR ARISES IN THE FUTURE AND WHETHER BASED ON CONTRACT, IN TORT, OR ON ANY OTHER LEGAL THEORY, INCLUDING CLAIMS OF FRAUD, SUPPRESSION, MISREPRESENTATION AND FRAUD IN THE INDUCEMENT (INDIVIDUALLY AND COLLECTIVELY, ANY `CLAIM'), WILL BE SETTLED BY BINDING ARBITRATION
UNDER THE FEDERAL ARBITRATION ACT (`FAA'), 9 U.S.C. SECTION 1 ET SEQ. YOU AND WE HEREBY WAIVE THE RIGHT TO A TRIAL BY JURY OF ALL SUCH CLAIMS."
(Capitalization and emphasis original.) After opening her account, James ordered checks; SouthTrust informed her that her checks would arrive by mail in approximately one week.
After one week had passed and James's checks had not arrived, she contacted SouthTrust. SouthTrust informed James that it had mailed the checks to the wrong address and the checks had been returned to SouthTrust. SouthTrust further told James that pursuant to SouthTrust's policy, the checks had been destroyed. SouthTrust assured James that she soon would receive checks SouthTrust had ordered to replace the destroyed checks.
James received the new checks; however, she was notified that forged checks and forged deposit slips were being used to conduct transactions on her account. James's account was assessed fees associated with the forgeries, which in the aggregate, totaled 13 separate incidents. Of those 13 incidents, at least 5 occurred in other states. As a result, James closed the account and opened at SouthTrust a new account. However, James asserts that the fraudulent activity on her bank account negatively impacted her credit, caused collection agencies to attempt collection of unpaid debts created by the forgeries, and may subject her to criminal prosecutions.
There is no dispute that in signing the deposit agreement, James submitted to the arbitration agreement contained in the rules. "James acknowledges the existence of a contract between the parties that contains an arbitration provision." (James's reply brief, p. 9.) She argues that the transactions between her and SouthTrust did not sufficiently affect interstate commerce. SouthTrust argues to the contrary, asserting that the nature of the transaction affects interstate commerce, bringing the dispute under the purview of the Federal Arbitration Act ("the FAA"),9 U.S.C. § 1 et seq. The applicable provision of the FAA,9 U.S.C. § 2, provides, in pertinent part:
 "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
While Alabama law and public policy disfavor arbitration agreements, section 2 "has the effect of preempting conflicting Alabama law, in particular Ala. Code 1975, § 8-1-41(3), and thereby making enforceable a predispute arbitration agreement in a contract evidencing a transaction that involves interstate commerce." Homes of Legend, Inc. v. McCollough, 776 So.2d 741,745 (Ala. 2000) (footnote omitted).
The crux of SouthTrust's argument is that because the initial deposit was made by a check drawn on an out-of-state bank; because the fraudulent activity occurred in another state; because SouthTrust is regulated by the Federal Reserve Board and *Page 1121 
its deposits are insured by the Federal Deposit Insurance Corporation; and because SouthTrust is a bank with relationships to banks in other states and branches in other states, the transaction involving it and James has an effect on interstate commerce. James contends that the individual transaction between her and SouthTrust does not have a "substantial effect" on interstate commerce. However, James relies on "substantial effect" as that term was defined in Sisters of Visitation v.Cochran Plastering Co., 775 So.2d 759 (Ala. 2000), and that standard is no longer applicable in determining whether a transaction has the requisite nexus with interstate commerce.Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037,156 L.Ed.2d 46 (2003). According to Alafabco, the decision inSisters of the Visitation adhered to "an improperly cramped view of the Congress' Commerce Clause Power." 539 U.S. at 58,123 S.Ct. at 2041. The United States Supreme Court stated: "Congress' Commerce Clause power `may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent `a general practice . . . subject to federal control.'"539 U.S. at 56-57, 123 S.Ct. at 2040 (quoting Mandeville IslandFarms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236,68 S.Ct. 996, 92 L.Ed. 1328 (1948)).
This case involves fraudulent activity relating to a bank checking account. There is no question that it is within Congress's authority to regulate the banking industry, as that industry is a key component of "commerce." "Banking and related financial activities are of profound local concern. . . . Nonetheless, it does not follow that these same activities lack important interstate attributes." Alafabco, 539 U.S. at 58,123 S.Ct. at 2041 (quoting Perez v. United States, 402 U.S. 146,154-55, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971)). We conclude that the banking transaction in this case had a sufficient nexus with interstate commerce as evidenced by the following facts. First, the initial check used to open James's account was drawn on a bank in Chicago, Illinois, payable through FCC National Bank, located in Wilmington, Delaware. Next, SouthTrust has depositors located throughout the United States. The accounts are not segregated by state, so the money used to pay account holders is derived from a pool of funds that regularly flows across state lines. SouthTrust has submitted affidavits from its officers to attest to the nature of its interstate activity. In support of its motion to compel arbitration, SouthTrust submitted the affidavit of Heather Thornburg, a group vice president for SouthTrust; Thornburg's affidavit states:
 "7. Deposits with SouthTrust Bank are insured by the Federal Deposit Insurance Corporation. SouthTrust is required to and does maintain deposits with the Federal Reserve Bank.
 "8. SouthTrust has depositors located throughout the United States. SouthTrust has branch offices throughout the southern United States, including Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina, Tennessee, Texas and Virginia.
 "9. Checks and other items drawn on deposit accounts maintained at SouthTrust are received from merchants and other payees throughout the United States. Items presented for payment from SouthTrust checking accounts are paid with funds derived from its interstate activities. SouthTrust uses the funds deposited with it to support its interstate activities."
Third, the fraudulent activity on which this action is based occurred not only in Alabama, *Page 1122 
where James opened the account, but also in Georgia and Illinois. Linda Eavenson, an assistant vice president for bank operations for SouthTrust, attests:
 "[James's] transactions involved deposits written on banks in other states, including Georgia and Illinois, specifically Regions Bank, Gainesville, Georgia; Heritage Bank, Albany, Georgia; Colonial Bank, Birmingham, Alabama; CB T, Junction City, Georgia; and LaSalle Bank, Chicago, Illinois."
We conclude that under Alafabco SouthTrust has shown that the transaction had a substantial effect on interstate commerce.
Although we conclude that the trial court's order denying arbitration cannot be affirmed on the basis that the transaction in question did not have a substantial effect on interstate commerce, we are cognizant of the settled rule that "[t]he appellate courts will affirm the ruling of the trial court if it is right for any reason. . . ." Premiere Chevrolet, Inc. v.Headrick, 748 So.2d 891, 893 (Ala. 1999) (citing McKenzieMethane Corp. v. M-W Drilling, Inc., 653 So.2d 982, 984 (Ala. 1995), and Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala. 1988)). In light of this rule, we also consider James's argument that we should affirm the trial court's order on the basis that the agreement containing the arbitration provision is unconscionable because it gives SouthTrust the right to unilaterally amend the rules in the future. This Court stated inConseco Finance Corporation-Alabama v. Boone, 838 So.2d 370,373 (Ala. 2002), quoting Fleetwood Enterprises, Inc. v. Bruno,784 So.2d 277, 281 (Ala. 2000), that "`[u]nconscionability is an affirmative defense, Green Tree Fin. Corp. v. Wampler,749 So.2d 409, 415 (Ala. 1999), and the party asserting the defense bears the burden of proof. Ex parte Napier, 723 So.2d 49, 52-53
(Ala. 1998).'" The "`applicable standards for determining unconscionability are set forth in American General Finance[,Inc. v. Branch], 793 So.2d [738] at 748 [(Ala. 2000)] — whether there are (1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power.'" Gayfer Montgomery FairCo. v. Austin, 870 So.2d 683, 689 (Ala. 2003) (quoting Leonardv. Terminix Int'l Co., 854 So.2d 529, 538 (Ala. 2002)) (footnote omitted).
James argues in her brief to this Court that "SouthTrust's promise [to arbitrate disputed claims] is illusory and should be unenforceable due to the fact that SouthTrust could amend its own [rules] to allow it to proceed into a court of law on any dispute while limiting the customers' right to arbitration." The deposit agreement stated that James agreed to be bound by the rules "and all amendments made . . . to them from time to time upon notice to" her as the sole signatory on the account. In SouthTrust Bankv. Williams, 775 So.2d 184, 188 (Ala. 2000), a case where the bank's regulations allowed similar amendments and the arbitration provisions were added by amendment, this Court stated, "This case involves at-will, commercial relationships, based on a series of unilateral transactions. Thus, it is more analogous to cases involving insurance policies, such as Woodmen of the World v.Harris, 740 So.2d 362 (Ala. 1999), and Ex parte Rager,712 So.2d 333 (Ala. 1998)." (Footnote omitted.) In holding that the dispute in Woodmen of the World v. Harris, 740 So.2d 362 (Ala. 1999), could be arbitrated, this Court stated:
 "When Harris purchased insurance from Woodmen, he agreed to be bound by all of the documents expressly incorporated into the certificate, specifically the Woodmen constitution and any amendments to that constitution. The certificate states that `[t]he Articles of Incorporation and the Constitution and laws and any amendments to them are binding on the member.' The arbitration *Page 1123 provision was duly adopted by an amendment of the kind that Harris agreed to be bound by when he joined Woodmen. Although Harris may not have expressly assented to the particular arbitration provision at issue here, it appears to be undisputed that he did assent to the plain terms of the certificate, which, at the time he entered into the contract with Woodmen, included a provision allowing for future amendments to the constitution."
740 So.2d at 367 (emphasis added).
When James signed the deposit agreement, she agreed to be bound by the rules and by any subsequent amendments to those rules. The arbitration provision was already a feature of those rules, and James was given a copy of them. The mere fact that SouthTrustcan unilaterally amend the rules in the future is not detrimental to its position, because "[a]mendments to the conditions of unilateral-contract relationships with notice of the changed conditions are not inconsistent with the general law of contracts." Williams, 775 So.2d at 190-91. James consented to any future amendments, not involved in this case, when she signed the contract — the deposit agreement. Therefore, enforcement of the arbitration provision is not unconscionable.
For the foregoing reasons, we conclude that the trial court erred in denying SouthTrust's motion to compel arbitration. The order of the trial court is therefore reversed, and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, BROWN, WOODALL, and STUART, JJ., concur.